STATE OF CONNECTICUT *v.* JEROME MOORE
(11833)

DUPONT, C. J., O'CONNELL and HEIMAN, Js.

Argued February 22—decision released May 17, 1994

*Lauren Weisfeld,* assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Maureen Keegan,* assistant state's attorney, and *John Connelly,* state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from his conviction, after a jury trial, of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a)[1] and possession of marijuana with intent to sell in vio-

[1] General Statutes § 21a-277 (a) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance . . . shall be imprisoned not more than fifteen years and may be find not more than fifty thousand dollars or be both fined and imprisoned . . . ."

lation of General Statutes § 21a-277 (b).[2] The defendant claims that the trial court (1) improperly allowed expert testimony on the ultimate issue, (2) improperly gave the Chip Smith charge, and (3) improperly instructed on reasonable doubt.

The jury reasonably could have found that on June 25, 1991, the Waterbury police received a report that someone was selling narcotics in front of 46 Harris Circle. Three uniformed officers were sent to the location where they found three or four males standing near a fire escape. As the officers approached, the group started to disperse and the defendant dropped a crumpled brown paper bag. The bag contained nine plastic bags of a substance that tested to be marijuana and thirty small plastic bags of a substance that tested to be crack cocaine. The police searched the defendant's pockets and found $196.

I

At trial, Sergeant Edward Stephens of the Waterbury police department qualified as a narcotics expert, including having expert knowledge of the quantities of drugs typically possessed by people who buy them for personal use as compared to those who sell them.[3]

---

[2] General Statutes § 21a-277 (b) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana . . . may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned . . . ."

[3] The testimony of Stephens regarding this matter was as follows:

"Q. [I]n your experience, have you ever known of someone that had thirty bags of crack, nine bags of marijuana within a bag similar to state's exhibit four, that brown paper bag on their person, and it was just for personal use?

"A. No, you'd never find that.

"Q. Why wouldn't you find somebody with thirty bags of crack for personal use?

"A. If they have the crack on them, because of the addiction of it, they're going to be smoking it. If a user has thirty bags, he's going to be sitting

Stephens testified that a crack cocaine user usually bought only one or two bags and the typical marijuana user bought one to three bags. Stephens was not involved in the investigation of the case and testified solely concerning the usual course of narcotics activity in Waterbury.

On appeal, the defendant argues that Stephen's testimony constituted expert testimony on the ultimate issue of the case and, therefore, was improperly admitted. The defendant did not raise this objection at trial. Such failure is contrary to the fundamental rule that in order to have appellate review an objection must be raised at trial. Practice Book § 4185.[4] The defendant now seeks review under *State* v. *Golding,* 213 Conn. 233, 239-40, 567 A.2d 823 (1989).[5] The defendant's attempt at *Golding* review is defeated by his failure to satisfy the second and third *Golding* prongs.

somewhere smoking those thirty bags . . . . You'd never find them hanging around. Most of the time you'll see buyers drive right away from buying it, stop down the street and smoke it right then and there. They don't like to save it for later on, never. They'll carry their crack pipes right with them.

"Q. Do you have an opinion then if there was a person that had thirty bags of crack and nine bags of marijuana on their person, whether it would be for personal use or for sale?

"A. My opinion is definitely for sale.

"Q. Why is that?

"A. They're not going to be, like I said, standing around with it, with the crack just hanging out. They're going to be smoking it, a user would."

[4] Practice Book § 4185 provides in pertinent part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interest of justice notice plain error not brought to the attention of the trial court. . . ."

[5] Under *State* v. *Golding,* supra, 213 Conn. 239-40, the defendant can prevail on an unpreserved claim "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.)

Our Supreme Court has repeatedly held that challenges to trial court rulings admitting this type of police narcotics expert testimony are evidentiary in nature, rather than constitutional. *State* v. *Walton,* 227 Conn. 32, 61, 630 A.2d 990 (1993); *State* v. *Campbell,* 225 Conn. 650, 657, 626 A.2d 287 (1993); *State* v. *Vilalastra,* 207 Conn. 35, 46, 540 A.2d 42 (1988). Accordingly, the defendant fails to satisfy the second *Golding* prong requiring that the claim be of constitutional magnitude alleging the violation of a fundamental right.

Even if the claim had been of constitutional magnitude, the defendant has failed to demonstrate, under the third *Golding* prong, that the alleged violation clearly exists. Numerous cases hold that an expert witness may testify as to the ultimate issue when the question is outside the scope of common knowledge shared by average jurors and the expert's opinion would assist the jury in making an intelligent finding on the issue. *State* v. *Vilalastra,* supra, 207 Conn. 41; *State* v. *Johnson,* 140 Conn. 560, 563, 102 A.2d 359 (1954); *State* v. *Holeman,* 18 Conn. App. 175, 178–79, 556 A.2d 1052 (1989); *State* v. *Nelson,* 17 Conn. App. 556, 565, 555 A.2d 426 (1989). The significance of the quantity of narcotics found on a suspect is not within the common knowledge of the average juror and, therefore, is a proper subject of expert testimony. See *State* v. *Holeman,* supra, 179.

The defendant also seeks review as plain error under Practice Book § 4185.[6] Review under the plain error doctrine " 'is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' " *State* v. *Miller,* 202 Conn. 463, 469, 522 A.2d 249 (1987). The defend-

---

[6] See footnote 4.

ant's claim does not rise to the magnitude of plain error and we decline to review it under that doctrine.

## II

The defendant next complains that the trial court's Chip Smith charge was improper because it was (1) inherently coercive and (2) given twice. The record discloses that jury deliberations commenced at 2:05 p.m. on May 5, 1992. For reasons unrelated to this case, the jurors were excused for the day at 3:45 p.m. The following morning, the jurors twice requested that testimony be read to them. At 12:55 p.m., the jury sent the court a note stating that it could not reach a unanimous verdict. At that point, the total jury deliberation time, excluding the reading of testimony, was approximately three hours and fifteen minutes. The court addressed the jurors and asked that they return after lunch and resume their deliberations.[7] At about 3:50 p.m. the jury sent the court another note, which stated: "Your Honor, each juror is adamant in his/her decision. There has not been a change since the start of deliberations. We feel strongly that a unanimous decision cannot be reached." The court then gave the jury a Chip Smith charge.[8] See *State* v. *Smith,* 49 Conn. 376, 386 (1881). Twenty-five minutes later the jury returned guilty verdicts on each count.

---

[7] Before adjourning for lunch, the court made the following statement: "Ladies and gentlemen, it's almost one o'clock. So I'm going to excuse you for lunch and have you come back at two o'clock and resume your deliberations. I do have your note, and I understand that there is some difficulty you have encountered in reaching a unanimous verdict. I want you to give it some further effort. You really haven't been deliberating that long. It may seem like it. It's easy for me to say because I'm not in that little room with you, but, from my experience, I can tell you [that you] really haven't spent a great deal of time in your deliberations, although I'm sure you have tried hard to reach unanimous accord. In any event, I do want you to resume your deliberations at two o'clock . . . ."

[8] The Chip Smith charge given by the trial court was as follows: "Ladies and gentlemen, I have received your note signed by the foreperson. And I understand by that note that you're having great difficulty reaching a

The defendant complains about the substance of the Chip Smith charge given at 3:50 p.m. Moreover, he complains that this was the second time a Chip Smith charge was given. He argues that the charges violated his right to due process of law and his right to a fair trial by an uncoerced jury as guaranteed by the sixth and fourteenth amendments to the United States constitution, and article first of the Connecticut constitution.

We first address the attack on the substance of the Chip Smith charge, which is designed to assist a jury

unanimous verdict and there is some belief that you're not going to be able to do that. It does happen that juries have problems, difficulty in reaching a unanimous decision. It happens at times, but fortunately not too often. And often when there is an initial inability to reach an accord, the court will give the jury a supplemental instruction and ask the jury to retire, having heard the supplemental instruction, and make a further effort to reach a decision. And that's what I'm going to do. I'm going to give you that instruction at this time and ask you again, if you would please, to try to come to a decision, if you can. If it's not possible to do that, I assume that we'll hear again from you. But I want you to pay attention to what I have to say. And at the conclusion, I'll ask you to retire and to resume your deliberations.

"Although the verdict to which each juror agrees must, of course, be his or her own conclusion and not a mere acquiescence in the conclusions of your fellow jurors, yet in order to bring six minds to a unanimous result, the jurors should examine with candor the issues before them with due regard and deference to the opinions of each other.

"In conferring together, the jury ought to pay proper respect to each other's opinion and listen attentively to each other's arguments. If a larger number of the panel are for a particular verdict, a dissenting juror should consider why his own conclusion is one which makes no impression upon the minds of so many other jurors, equally honest, equally intelligent, who have heard the same evidence with the same attention and with an equal desire to arrive at the truth and understand the sanction of the same oath.

"The minority, if there is a minority, ought seriously to ask themselves whether they may not reasonably doubt their conclusions as to a decision which is not concurred in by a larger number of those with whom they are associated and at the same time distrust the weight or sufficiency of that evidence which fails to be persuasive in the minds of a larger number, if there is a number, of their fellow jurors. So with that supplemental instruction, I'm going to ask you to resume your deliberations, and we'll await word from you."

in breaking an impasse in its deliberations and which has been consistently upheld by our Supreme Court. *State* v. *Pinnock*, 220 Conn. 765, 793–96, 601 A.2d 521 (1992); *State* v. *Ryerson*, 201 Conn. 333, 349, 514 A.2d 337 (1986); *State* v. *Stankowski*, 184 Conn. 121, 141–46, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). A similar jury instruction, known as an Allen charge, is utilized in the federal courts. See *Allen* v. *United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896). The charge as given in this case was fair and did not favor either the state or the defendant. Accordingly, we reject the defendant's claim that the Chip Smith charge as given at 3:50 p.m. was inherently coercive.

We turn now to the defendant's claim that the Chip Smith charge was particularly coercive in the present case because it was given twice. The fallacy in the defendant's argument is that the record does not show that the trial court gave the Chip Smith charge more than once. The defendant argues that the court's remarks to the jury before the luncheon recess constituted a Chip Smith charge.[9] We are not persuaded. The thrust of those comments was not to change any juror's attitude or approach to the deliberations. It was simply a remark that in the court's experience it was too soon to declare a deadlock. We conclude that even if it had significance, the defendant did not establish that the court gave the Chip Smith charge after the jury's initial deadlock.

Additionally, we note that our attention has not been called to any authority that prohibits giving a Chip Smith charge more than once. Although decisions as reported do not disclose whether the charge was given twice, the Supreme Court and this court have approved cases in which the jury has been returned at least twice

---

[9] See footnote 7.

for reconsideration, after reporting inability to reach a unanimous decision. See *State* v. *Bradley,* 134 Conn. 102, 112, 55 A.2d 114 (1947), cert. denied, 333 U.S. 827, 68 S. Ct. 453, 92 L. Ed. 112 (1948); *State* v. *Cianflone,* 98 Conn. 454, 462, 120 A. 347 (1923); *State* v. *Colon,* 28 Conn. App. 231, 244, 611 A.2d 902 (1992).

## III

The defendant does not pursue his last claim that the trial court's jury instruction on reasonable doubt violated his right to due process of law under the fifth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution. The instruction involved has been held not to be constitutionally defective. *State* v. *DePastino,* 228 Conn. 552, 573, 638 A.2d 578 (1994).

The judgment is affirmed.

In this opinion the other judges concurred.