******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* YUWELL A. MITCHELL
(AC 37394)

DiPentima C. J., and Sheldon and Schaller, Js.

*Argued September 8, 2016—officially released January 17, 2017*

(Appeal from Superior Court, judicial district of New Haven, geographical area number twenty-three, O'Keefe, J.)

*Alan Jay Black*, for the appellant (defendant).

*Lisa Herskowitz*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *Karen A. Roberg*, assistant state's attorney, and *Dennis V. Mancini*, former special deputy assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Yuwell Mitchell, appeals from the judgment of conviction, rendered following a jury trial, on the charges of sale of a narcotic substance in violation of General Statutes § 21a-278 (b) and sale of a narcotic substance within 1500 feet of a school in violation of General Statutes § 21a-278a (b). On appeal, the defendant claims that the trial court's jury instruction to continue deliberations after the jury reported that it was unable to reach a verdict violated his right to a fair trial by coercing the jurors to reach a unanimous verdict without providing a cautionary reminder of their duties as individual jurors not to agree to a verdict unless they personally agree to it under the court's instructions as applied to the evidence before them. We affirm the judgment of the trial court.

The jury was presented with evidence of the following facts. On May 6, 2012, the New Haven Police Department engaged Zerline Savage as a cooperating witness[1] in an attempt to make a controlled purchase of narcotics.[2] Officers of the New Haven Police Department and Savage met at the predetermined location of Science Park. After Savage was searched to ensure that she did not have any money or drugs on her person, the officers gave her department issued money with which to complete a controlled purchase. In addition, the officers gave her an audio-video recording device disguised as a key fob that she was to carry in her hand when she made the controlled purchase.

Savage was sent to buy narcotics. She made contact with the defendant outside of a convenience store in the area, and asked him if "he [had] anything." The defendant appeared upset to Savage, muttered something, and entered the convenience store. Shortly thereafter, the defendant exited the convenience store and walked away. At some point thereafter, Savage entered a motor vehicle in which the defendant was sitting in the driver's seat. While sitting in the motor vehicle, Savage purchased crack cocaine from the defendant.[3] This exchange, which took place while the witness' hidden recording device was operating, occurred within 1500 feet of Celentano Museum Academy, a public elementary school. Following the purchase, Savage returned to the location of the officers, where she handed them the crack cocaine and the recording device. The officers again searched Savage, and then they and Savage viewed the recording together on a computer located in the officers' vehicle.

The defendant was arrested on June 30, 2012, and charged with sale of a narcotic substance in violation of § 21a-278 (b) and sale of a narcotic substance within 1500 feet of a school in violation of § 21a-278a (b). A jury trial commenced on May 22, 2014, and deliberations began on May 27, 2014. On May 28, 2014, the jury

informed the court that it could not reach an agreement.[4] In response, the court[5] proposed an instruction that the jury continue deliberating, and review the evidence and the position of each juror to ensure that nothing had been misunderstood or overlooked. Defense counsel objected to the proposed instruction, stating that he was concerned that the jury, if so instructed, would feel compelled to reach a verdict.[6] Defense counsel, however, did not recommend any specific language that would satisfy his concern.

The court determined that its proposed instruction would not suggest to the jury that it had to reach a verdict and that the instruction was an appropriate response to the jury's note. It therefore delivered the following instruction at approximately 11 a.m.: "I'm going to say the following to you, ladies and gentlemen, and then you will continue with your deliberations. By the court's estimation, you have been deliberating for approximately three hours. I know you started yesterday afternoon, and you came in here a little bit after 10:00 today. At this point, I simply suggest that you continue your deliberations. You should review the evidence and the positions of each juror to determine if any evidence has been overlooked or any juror's position misunderstood with respect to either the evidence or the law. Please continue to listen to what each other has to say. Thank you, ladies and gentlemen. You will continue with your deliberations."

After approximately five and one-half hours of deliberations, the jury announced that it had reached a verdict.[7] It found the defendant guilty on both charges. He was sentenced to a total effective sentence of five years of imprisonment, execution suspended after one year, followed by three years of probation. The defendant filed this appeal.

The defendant claims that the court's jury instruction to continue deliberations violated his right to a fair trial. Specifically, he contends that the court's jury instruction lacked cautionary language informing jurors to balance their duty to listen to their fellow jurors against their duty not to surrender their own conscientiously held views of the evidence merely to reach a unanimous verdict. The defendant further contends that, by not informing the jury that it was not compelled to reach a verdict, the court effectively informed the jury that it was required to reach a verdict. The defendant claims that these instructional errors operated to coerce the jury in conducting its deliberations and in reaching a guilty verdict. We disagree.

At the outset, we must address whether the defendant failed to preserve his claim at trial. We conclude that the defendant's claim was not preserved. Accordingly, a *Golding* analysis is required.[8] Under *Golding*, as modified in *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 118 (2015), "a defendant can prevail on a claim of constitu-

tional error not preserved at trial only if all of the conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted.) *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified in *In re Yasiel R.*, supra, 773. "The first two [*Golding*] requirements involve a determination of whether the claim is reviewable; the second two requirements involve a determination of whether the defendant may prevail." *State* v. *George B.*, 258 Conn. 779, 784, 785 A.2d 573 (2001).

The defendant's claim is reviewable inasmuch as it satisfies the first two prongs of *Golding*, as the record is adequate for review of the defendant's claim, and the claim is of constitutional magnitude. See *State* v. *Hampton*, 293 Conn. 435, 450, 988 A.2d 167 (2009). We conclude, however, that the claim fails under the third prong of *Golding* because the alleged constitutional violation does not exist and did not deprive the defendant of a fair trial. Thus, the defendant cannot prevail.

Our resolution of the defendant's claim with regard to the third prong of *Golding* is pursuant to the following legal principles. "It is well settled that jury instructions are to be reviewed in their entirety. . . . When the challenge to a jury instruction is of constitutional magnitude, the standard of review is whether it is reasonably possible that the jury [was] misled. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement . . . . Individual instructions also are not to be judged in artificial isolation . . . . Instead, [t]he test to be applied . . . is whether the charge . . . as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Alonzo*, 131 Conn. App. 1, 4–5, 26 A.3d 109, cert. denied, 303 Conn. 912, 32 A.3d 965 (2011). "Whether a jury [was] coerced by statements of the trial judge is to be determined by an examination of the record. . . . The question is whether in the context and under the circumstances in which the statements were made, the jury [was], actually, or even probably, misled or coerced." (Internal quotation marks omitted.) *State* v. *Daley*, 161 Conn. App. 861, 866, 129 A.3d 190 (2015), cert. denied, 320 Conn. 919, 132 A.3d 1093 (2016).

Since 1881, our Supreme Court has approved of instructing deadlocked juries that they should continue to deliberate, with minority view jurors considering the logic of the majority view jurors as they did so. See

*State* v. *Smith*, 49 Conn. 376, 386 (1881). In *State* v. *O'Neil*, 261 Conn. 49, 59, 801 A.2d 730 (2003), although our Supreme Court continued to uphold such instructions, it also recognized the potential for the coercion of minority view jurors. Specifically, our Supreme Court concluded that instructing jurors to consider the opinions of majority view jurors is an acceptable method of facilitating the deliberative process when faced with a deadlocked jury, but that the court must balance the instruction with a cautionary reminder to jurors of their obligation as individuals to give their own verdict without surrendering their conscientiously held views. Id., 73. Although reaching a unanimous verdict is an important public policy goal; id., 74; the defendant's due process rights also must be protected, and the defendant has the right to "have each and every juror vote his or her conscience irrespective of whether such vote results in a hung jury." Id., 76.

To ensure that such a cautionary reminder be given by our trial courts in future cases, our Supreme Court adopted the following language as a model instruction: "The instructions that I shall give you now are only to provide you with additional information so that you may return to your deliberations and see whether you can arrive at a verdict.

"Along these lines, I would like to state the following to you. The verdict to which each of you agrees must express your own conclusion and not merely the acquiescence in the conclusion of your fellow jurors. Yet, in order to bring your minds to a unanimous result, you should consider the question you have to decide not only carefully but also with due regard and deference to the opinions of each other.

"In conferring together, you ought to pay proper respect to each other's opinions and listen with an open mind to each other's arguments. If the much greater number of you reach a certain conclusion, dissenting jurors should consider whether their opinion is a reasonable one when the evidence does not lend itself to a similar result in the minds of so many of you who are equally honest and equally intelligent, who have heard the same evidence with an equal desire to arrive at the truth and under the sanctions of the same oath.

"But please remember this. Do not ever change your mind just because other jurors see things differently or to get the case over with. As I told you before, in the end, your vote must be exactly that—your own vote. As important as it is for you to reach a unanimous agreement, it is just as important that you do so honestly and in good conscience.

"What I have said to you is not intended to rush you into agreeing on a verdict. Take as much time as you need to discuss the matter. There is no need to hurry." (Emphasis omitted.) Id., 74–75.

Since *O'Neil*, our courts have used such cautionary language in what has become known as a Chip Smith charge when instructing a deadlocked jury to consider the majority view. Such language is not required, however, when the court merely tells jurors to continue deliberating without instructing them in a potentially coercive manner. In the present case, the court merely told the jurors to continue deliberating after the jury reported that it was unable to reach a verdict.[9] Because the instruction did not include language potentially coercing the jurors to reach a unanimous verdict, it did not require a cautionary reminder to the jurors of their individual duties not to agree to a verdict unless they personally agreed to it under the court's instructions as applied to the evidence before them. Thus, we conclude that the court's instruction to continue deliberations did not violate the defendant's right to a fair trial.

The record shows that, when the jury was having difficulty reaching an agreement, the court gave a brief instruction to the jury to continue its deliberations. The thrust of this instruction "was not to change any juror's attitude or approach to the deliberations." *State* v. *Moore*, 34 Conn. App. 411, 418, 641 A.2d 804 (instruction to jurors to continue deliberations because, in judge's experience, it was too soon to declare deadlock was not Chip Smith charge), cert. denied, 230 Conn. 914, 645 A.2d 1020 (1994). In fact, none of the language in the instruction suggested that the jurors should give deference to other jurors' opinions and reevaluate the evidence and conclusions based on the majority view, as instructed in a Chip Smith charge. Rather, the instruction simply encouraged the members of the jury to review the evidence and the positions of each juror to ensure that their inability to reach a verdict was not due to an oversight or misunderstanding of the evidence and the law. Instructing the members of the jury to take more time to deliberate to avoid a potential misunderstanding and oversight is patently different from the Chip Smith charge adopted in *O'Neil*, where minority view jurors were instructed to reevaluate their positions in light of those of the majority view. *State v. O'Neil*, supra, 261 Conn. 75; see *State* v. *Colon*, 37 Conn App. 635, 646, 657 A.2d 247 (instructing jurors to consider what other jurors have to say is merely informal comment for jury "to relax" and think about what others' opinions were), cert. denied, 234 Conn. 911, 660 A.2d 354 (1995). Because the language in the court's instruction to the jury to continue deliberations did not include language directing jurors to consider why majority view jurors reached a different conclusion, the potential to corrode the jurors' exercise of their independent right to vote on the basis of their own conscientiously held views did not exist. The court, therefore, was not required to include a cautionary reminder to the jurors that their decisions must be their own, and not those of majority view jurors merely to reach a unanimous

verdict.

Moreover, the court's decision not to instruct the jurors that they were not compelled to reach a verdict did not effectively coerce the jurors into reaching a unanimous verdict. Although our Supreme Court has approved the inclusion of cautionary language related to reaching a verdict; *State* v. *O'Neill*, 200 Conn. 268, 283–84, 511 A.2d 321 (1986); the court has never held it to be required. Rather, the court has stated that "a defendant is entitled only to a jury unfettered by an order to decide and not to an instruction that a jury may hang." (Internal quotation marks omitted.) *State* v. *Smith*, 222 Conn 1, 22, 608 A.2d 63, cert. denied, 506 U.S. 942, 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992). In the present case, the court stated at the outset that it "simply suggest that [the jury] continue [its] deliberations" and it told the jurors to "continue to listen to what each other has to say." The choice of language for this instruction convinces us that the jury never was coerced into reaching an agreement or led to believe that it was compelled to reach a verdict. See *State* v. *Smith*, supra, 23. Further, this court has held that "[r]equiring jurors to return to continue deliberating is not coercive in itself . . . ." *State* v. *Daley*, supra, 161 Conn. App. 880. Accordingly, we conclude that when the court gave its instruction to continue the deliberation process, it neither instructed the jury that the case must be decided, nor precluded the possibility that a disagreement amongst the jurors might occur.

Furthermore, we reject the defendant's argument that *State* v. *Feliciano*, 256 Conn. 429, 778 A.2d 812 (2001), compels us to reach a different conclusion. In *Feliciano*, the jury reported that it was unable to come to a decision. Id., 434. In response, the jury received a brief instruction quite similar to the one at issue in the present case.[10] Id. When the jury still could not reach a verdict, the court delivered three Chip Smith charges. Id., 434–38. On appeal from his conviction, the defendant argued that the Chip Smith charges had been unfairly coercive. Our Supreme Court held that the trial court properly had delivered its Chip Smith charges, and that the charges "properly informed the jury that each member had the individual responsibility to consider the opinion of the others *and* to satisfy him or herself of the correctness of his or her opinion and not merely to acquiesce in the conclusion of others." (Emphasis in original.) Id., 442.

In the present case, the defendant claims that *Feliciano* included an incomplete Chip Smith charge allegedly cured by subsequent appropriate Chip Smith charges that contained language to prevent jurors from being compelled to change their opinions. The defendant's reliance on *Feliciano*, however, is misplaced. While the defendant correctly concludes that the language of the charge determines whether it is coercive; id., 440, 441

("[t]he language of the charge does not direct a verdict, but encourages it"); he appears to misunderstand our Supreme Court's distinction among the various charges given in *Feliciano*. Our Supreme Court did not consider the brief instruction, similar to the one at issue here, to be an instruction requiring a cautionary reminder, and it did not take issue with the language used in the brief instruction. Id., 441–42. In turn, our Supreme Court's discussion of balancing the encouragement of unanimity and a cautionary reminder to not surrender one's beliefs did not apply to the brief instruction similar to the one at issue here.

On the basis of our review of the court's charge, we conclude that the court's instruction to continue deliberations did not include language coercing the jury to reach a verdict, and, therefore, the court was not required to provide a cautionary reminder to jurors of their individual duties to give their own verdict without surrendering their conscientiously held beliefs. Accordingly, we conclude that the defendant has failed to satisfy the third prong of *Golding* and cannot prevail on his claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Detective Ryan McFarland of the New Haven Police Department defined a cooperating witness as a person who enters into a formal agreement with the New Haven Police Department to assist in the investigation of criminal violations occurring in the city of New Haven. The cooperating witness is paid forty dollars for every controlled purchase of narcotics completed.

[2] Testimony varied on whether the defendant was the specific target from whom Savage was to purchase narcotics on May 6, 2012. In his testimony, Lieutenant Doug Harkins stated that Savage was not given a specific target from whom she was to purchase narcotics. Detective McFarland and Savage, on the other hand, both testified that the defendant was the target. Savage, however, also testified that it was her idea, not that of the police, to target the defendant for the controlled purchase.

[3] A detective performed a test on a small portion of the substance purchased by Savage, and it tested positive for crack cocaine. A forensic science examiner with the Connecticut Department of Emergency Services and Public Protection later confirmed the substance as crack cocaine.

[4] The court received several notes from the jury. The note relevant to this appeal was received on May 28, 2014, at approximately 10:27 a.m. and stated: "It seems that we are unable to reach an agreement."

[5] Judge Thomas O'Keefe presided over the trial. On May 28, 2014, however, the day of the charge in question and the jury verdict, Judge O'Keefe could not be there, and, as a result, Judge Brian Fischer took his place.

[6] Counsel for the defendant stated: "I just want to make sure that the jury doesn't feel that they have to reach a verdict. If that—if you understand what I'm saying. In other words, I don't want them being sent back in there in a position of thinking, you know, we're going to be here forever until we can come to a verdict. I don't know what language would—would have addressed those concerns, but it would be—from my standpoint, it would be helpful for them to understand that sometimes, notwithstanding what the court is instructing them to do, that there is still a possibility that—that there can be an impasse and that they are not mandated to come up with a—a verdict."

[7] The jury had deliberated for approximately three hours between the afternoon of May 27, 2014, and the morning of May 28, 2014. At 10:50 a.m., the jury informed the court that it could not reach an agreement. Shortly thereafter, the court gave its instruction. The court recessed for lunch from approximately 1 p.m. to 2 p.m. At 2:31 p.m., the jury informed the court that it had reached a verdict.

[8] Our Supreme Court has held that a defendant is entitled to review under

*Golding*, even if he failed to specifically request it, as long as he "[raises] that claim in his main brief, wherein he must present a record that is [adequate] for review and affirmatively [demonstrate] that his claim is indeed a violation of a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 755, 91 A.3d 862 (2014) (defendant's claim was reviewable despite defendant's failure in main brief to identify issues related to reviewability, to state that any extraordinary level of review was required, to refer to *Golding* opinion, or to present analysis of why claim still was reviewable because claim "otherwise was properly briefed, identified relevant constitutional authorities, and was founded on an adequate record for review"). In the present case, although the defendant has not specifically requested *Golding* review, he has provided a record adequate for review and has demonstrated, by a discussion of relevant substantive law and its application to the facts of this case, that his claim implicates his right to a fair trial. In addition, the state, in its brief, explicitly states that it does not challenge the reviewability of the defendant's unpreserved claim.

[9] According to the court, the jury's note indicating that it could not reach an agreement did not mean that the jury was deadlocked. We agree with the trial court's conclusion. The court stated: "It's not like we are completely at loggerheads. There's not a chance in the world. I mean, the language that they sent us was very—very modest, to say the least, on the question we normally get when there seem to be some difficulty with reaching a verdict."

[10] The court in *Feliciano* instructed as follows: "Okay, folks, I have your note. It simply reads: We are unable to come to a unanimous decision on the first count. In response to that, let me tell you that when you subtract the read backs and time spent in court or in breaks, you have been deliberating for less than a full day. At this point I simply suggest that you continue your deliberations. You should review the evidence and the position of each juror to determine if any evidence has been overlooked or any juror's position misunderstood with respect to either the evidence or the law." (Internal quotation marks omitted.) *State* v. *Feliciano*, supra, 256 Conn. 434.

---