******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* GARYL ALEXIS
(AC 40528)

Keller, Moll and Bishop, Js.

*Syllabus*

Convicted of the crimes of robbery in the first degree and threatening in the second degree, the defendant appealed to this court. The defendant's conviction stemmed from an incident in which he displayed a semiautomatic pistol to the victims and stole marijuana from them, dropping his wallet as he fled. Upon receiving a text message from one of the victims, the defendant replied with a text message demanding his wallet and threatening to shoot the victims. On appeal, the defendant claimed, inter alia, that the trial court erred by admitting into evidence a photograph of guns that had been forensically extracted from his cell phone by the police. *Held*:

1. Even if it was improper for the trial court to admit the photograph into evidence and not give the jury a limiting instruction, the defendant failed to demonstrate that he was harmed thereby, as the alleged error did not substantially affect the verdict; the state's case against the defendant was supported by additional strong evidence, including identifications of the defendant by victims who knew him, and the state presented evidence of text messages that corroborated the victims' version of events, as well as evidence that the police had seized the defendant's wallet from the crime scene.

2. The defendant could not prevail, pursuant to *State* v. *Golding* (213 Conn. 233), on his unpreserved claim that the state violated his due process right to a fair trial by eliciting testimony during a witness examination and making a remark during closing arguments about his postarrest and post-*Miranda* silence; even if a constitutional violation existed, the state established that the alleged constitutional violation was harmless beyond a reasonable doubt, as the prosecutor did not focus on the defendant's post-*Miranda* silence or engage in repetitive references to the defendant's silence, the challenged testimony related to the efforts made by the police to locate the firearm, evidence introduced by the state that was unrelated to the defendant's silence, including the identification of the defendant by two witnesses who knew him, which corroborated text messages between the defendant and a victim, and the seizure of the defendant's wallet from the crime scene, proved his guilt beyond a reasonable doubt, and defense counsel failed to object to the testimony and prosecutor's remark during closing arguments.

Argued January 9—officially released November 5, 2019

*Procedural History*

Substitute information charging the defendant with the crimes of robbery in the first degree and threatening in the second degree, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, and tried to the jury before *Kahn, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *William A. Adsit*, for the appellant (defendant).

*Jennifer F. Miller*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Joseph J. Harry*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Garyl Alexis, appeals from the judgment of conviction, rendered following a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4)[1] and threatening in the second degree in violation of General Statutes § 53a-62 (a) (1).[2] On appeal, the defendant claims that (1) the trial court erred by admitting into evidence an unduly prejudicial photograph of guns that had minimal, if any, probative value, and (2) pursuant to *Doyle* v. *Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), the state violated his due process right to a fair trial by eliciting testimony and making a remark during closing arguments about the defendant's silence following his arrest and the advisement of his constitutional rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We conclude that any error relating to the court's admission of the photograph was harmless and that any *Doyle* violation was harmless beyond a reasonable doubt. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In May, 2015, Jorge Perez and his girlfriend, Paige Whitley, lived with Whitley's parents in a first floor apartment of a multifamily home in Stratford (Whitley residence). The defendant lived several blocks away in Stratford. On May 21, 2015, Perez and Whitley were present at the Whitley residence. At 9:24 a.m., Perez sent a text message to the defendant and invited him to come over to purchase marijuana. The defendant went to the Whitley residence, entered through the back door, and joined Perez and Whitley in Whitley's bedroom. The defendant then began chatting with Perez and Whitley. During their conversation, Perez removed a bag of marijuana from the bedroom closet and handed it to the defendant to allow the defendant to inspect its contents. Shortly thereafter, the defendant displayed a black, semiautomatic pistol and ordered Perez and Whitley to get down on the floor, repeating the order multiple times. Perez and Whitley remained motionless, and the defendant grabbed the bag of marijuana, which had been placed on a table, and ran out of the apartment through the back door. At some point prior to fleeing the Whitley residence, the defendant dropped his wallet in Whitley's bedroom. At 10:21 a.m., after the defendant had left, Perez sent a text message to the defendant, stating: "Dude cmon. For what? I thought we were chill." At 10:34 a.m., the defendant sent a text message to Perez in reply, stating: "Everybody is food and I want my wallet back boy unless you like shells I'm broke starving hate it had to be you I WANT MY WALLET BACK OR IMMA SEE U cuz." Thereafter, Perez and Whitley sought advice from Whitley's father, who, at the time, was outside in front of the apartment. After speaking with Whitley's father, Perez called the police

to report the incident.

Shortly thereafter, Officer Brian McCarthy and other police officers of the Stratford Police Department arrived at the Whitley residence, and Perez and Whitley provided written statements regarding what had occurred. The police began searching for the defendant, and, approximately twenty minutes after receiving the call from Perez, they were able to locate and detain the defendant just a few blocks away from the Whitley residence. Meanwhile, the police drove along the main routes between the Whitley residence and the defendant's residence and conducted a general search of the area where the defendant was located, but they were not able to locate the gun or the bag of marijuana. The police were able to recover the defendant's wallet and his cell phone, and Officer Paul Fressola performed two forensic examinations of the cell phone. During the second forensic examination, Officer Fressola discovered, among other things, a deleted photograph in which five firearms were displayed next to one another (photograph).

On June 8, 2015, by long form information, the state charged the defendant with one count of robbery in the first degree in violation of § 53a-134 (a) (4) and one count of threatening in the second degree in violation of § 53a-62 (a) (1). On September 30, 2015, the state filed a substitute long form information containing the same charges. On January 30, 2017, following a jury trial held on January 26, 27 and 30, 2017, the defendant was found guilty as to both counts. On March 13, 2017, the court imposed a total effective sentence of eight years of incarceration, execution suspended after three years, followed by five years of probation. This appeal followed. Additional facts and procedural history will be provided as necessary.

I

The defendant first claims that the trial court erred by admitting into evidence state exhibits 3, 4, and 7, which were three iterations of the photograph, in which five firearms were displayed, that had been extracted from the defendant's cell phone. Specifically, the defendant argues that the prejudicial effect of such evidence outweighed its probative value, if any, and that the unknown manner in which the photograph was created or saved on the defendant's cell phone further undermines the photograph's reliability. The defendant also makes the related claim that, having admitted the three iterations of the photograph, the trial court erred by failing to give, sua sponte, an appropriate limiting instruction to the jury. The state contends, in response, that the trial court properly admitted the photograph, that no limiting instruction was necessary, and that the defendant has failed to establish that any error was harmful. For the reasons that follow, we conclude that the defendant has failed to demonstrate that any error

in the court's admission of the photograph and/or the lack of a limiting instruction relating thereto resulted in harm.

The following additional facts and procedural history are relevant to the defendant's claim. On January 26, 2017, just prior to the commencement of trial, the state provided defense counsel with additional evidence that had been recovered during the second forensic examination of the defendant's cell phone. This additional evidence included, but was not limited to, the photograph and an accompanying extraction report, which showed that the photograph was created and accessed on May 16, 2015, five days before the robbery. Defense counsel orally moved to preclude the introduction of the photograph on the grounds that it lacked probative value, was unduly prejudicial, and was of unknown origin (i.e., an objection sounding in authentication). In response, the state argued that the probative value of the photograph outweighed its prejudicial impact because Perez and Whitley identified a gun in the photograph as being similar to the one the defendant displayed during the robbery. Thereafter, the court indicated that it would admit the photograph subject to a proper foundation being laid by the forensic examiner, reasoning that the prejudicial impact did not outweigh the photograph's highly probative value.[3] Trial commenced immediately thereafter.

The state first called Perez and then Whitley to testify. Perez and Whitley made in-court identifications of the defendant. Perez testified that he recalled the defendant, on the date in question, displaying a black, semiautomatic pistol; Whitley testified similarly that the defendant had pulled out a gun. Using a pen to mark and initial separate copies of the photograph, Perez and Whitley identified the same gun in the photograph as being similar to the gun that the defendant displayed during the incident.[4] When questioned about the text message sent by the defendant to Perez shortly after the incident, Perez and Whitley testified that they interpreted the defendant's use of the term "shells" to mean that the defendant would shoot Perez if Perez did not return the defendant's wallet. Given that Perez and Whitley identified the same gun depicted in the photograph and in light of the fact that the photograph was found on the defendant's cell phone, the court explained, outside the presence of the jury, that "there's a direct connection between the photo[graph] and the incident here which makes it highly probative as I said earlier and it comes in because its probative value outweighs its prejudicial impact."

On January 27, 2017, the state called Officer Fressola to testify. Officer Fressola testified that, a few days after the defendant's cell phone was seized by the police, he performed an initial forensic examination of the cell phone, which involved the retrieval of readily available

content, i.e., files that were not hidden or deleted. Officer Fressola also testified that, months later, he performed a second, more in-depth, forensic examination, which involved the recovery of deleted files, one of which was the photograph. He testified that he did not modify in any way the photograph or any other files retrieved. During the examination of Officer Fressola, the court admitted in full (1) an unmarked version of the photograph in color appended to the extraction report (state exhibit 3), (2) a black and white copy of the photograph (and extraction report) marked up by Perez during his testimony (state exhibit 4), and (3) a color copy of the photograph marked up by Whitley during her testimony (state exhibit 7). The court subsequently stated, outside the presence of the jury, that state exhibits 3, 4, and 7 had been admitted into evidence as full exhibits because the state established a connection between the gun allegedly displayed by the defendant during the incident and a gun depicted in the photograph. The court further explained: "Given that the image, which was found on the defendant's phone matches the description given by the alleged victims of the gun that they claim was pulled on them and they identified that as being the gun in this court's view made it highly probative and its probative value outweighed its prejudicial impact and that's why I allowed it."

Against this backdrop, we now turn to the defendant's contention that the court committed reversible error when it admitted into evidence state exhibits 3, 4, and 7. "We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . The trial court has wide discretion to determine the relevancy [and admissibility] of evidence . . . . In order to establish reversible error on an evidentiary impropriety . . . the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Internal quotation marks omitted.) *State* v. *Badaracco*, 156 Conn. App. 650, 665–66, 114 A.3d 507 (2015).

"When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [an improper ruling] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and

the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Bouknight*, 323 Conn. 620, 626–27, 149 A.3d 975 (2016).

Even assuming arguendo that the court erred in admitting the photograph and not giving a limiting instruction relating thereto, and applying the principles described previously in this opinion, we have a fair assurance that any error did not substantially affect the verdict. The state's case against the defendant without the photograph was remarkably strong. The witnesses, Perez and Whitley, both identified the defendant, whom they knew, as the perpetrator. Perez and Whitley testified consistently that, after chatting for a short while, the defendant suddenly threatened them with a gun, grabbed the bag of marijuana, and ran out of the apartment, accidentally leaving his wallet behind. Their version of events was consistent with the text messages between Perez and the defendant, which placed the defendant at the Whitley residence at the relevant time and which included the defendant's highly inculpatory statement (i.e., "Everybody is food and I want my wallet back boy unless you like shells I'm broke starving hate it had to be you I WANT MY WALLET BACK OR IMMA SEE U cuz"). Moreover, the state presented evidence that the defendant's wallet was seized from the Whitley residence, further corroborating Perez and Whitley's version of events. The strength of the foregoing evidence leads us to a fair assurance that the admission of the photograph did not substantially affect the verdict.

In light of the foregoing, we conclude that the defendant has not satisfied his burden to demonstrate that any error relating to the admission of the photograph was harmful. Therefore, the defendant's first claim fails.

## II

The defendant next claims, relying on *Doyle* v. *Ohio*, supra, 426 U.S. 617–18, that the state violated his due process right to a fair trial by eliciting testimony during a witness examination and making a remark during closing arguments about his postarrest and post-*Miranda* silence.[5] The defendant argues that, although this claim was not preserved before the trial court, the claim is reviewable pursuant to (1) *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973); see *State* v. *Morrill*, 197 Conn. 507, 536, 498 A.2d 76 (1985) ("*Doyle* violations . . . are properly reviewable under *State* v. *Evans*, [supra, 70] despite the failure to raise them in the trial court"); or (2) in the alternative, *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015).[6] The state

argues, in response, that any alleged *Doyle* violation was harmless beyond a reasonable doubt and, therefore, the defendant's claim fails under the fourth prong of *Golding*. We agree with the state.

The following additional facts are relevant to the defendant's claim. Officer McCarthy testified as a state's witness. During the direct examination, he testified with respect to his observations upon arriving at the Whitley residence, his conversations with Perez and Whitley, the search for and the arrest of the defendant, the inability of the police to locate the gun and the bag of marijuana, the seizure of the defendant's wallet at the scene and the defendant's cell phone from his person, and the times at which the two forensic examinations of the cell phone were performed. On cross-examination, defense counsel examined Officer McCarthy about the inability of the police to recover the gun and the marijuana. On redirect examination, the state engaged in relevant part in the following line of questioning, which the defendant claims was improper:

"Q. Did your office take any other action to try to locate this weapon?

"A. We had a detective that attempted to speak with [the defendant] and tried to get him to tell us where the weapon is, expressed concerns about child safety, things of that nature, but we got nowhere.

"Q. Okay. He didn't answer you?

"A. Excuse me?

"Q. He didn't answer you?

"A. He would not answer any questions, no."

During recross-examination, defense counsel and Officer McCarthy had the following exchange:

"Q. [W]ould you agree that an accused has a right to remain silent?

"A. Absolutely, sir."

The defendant also challenges on appeal the following statement made by the prosecutor during the state's closing argument: "[Officer McCarthy] stated that when he asked the defendant about the gun, the defendant didn't say anything." With respect to the foregoing testimony and remark during closing argument, defense counsel did not object, no curative instruction was requested, and none was given.

We now turn to our analysis of the defendant's claim. "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the

defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; internal quotation marks omitted.) *State* v. *Silva*, 166 Conn. App. 255, 280, 141 A.3d 916, cert. denied, 323 Conn. 913, 149 A.3d 495 (2016), cert. denied, U.S. , 137 S. Ct. 2118, 198 L. Ed. 2d 197 (2017). "The first two [*Golding*] requirements involve a determination of whether the claim is reviewable; the second two requirements involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Mitchell*, 170 Conn. App. 317, 322–23, 154 A.3d 528, cert. denied, 325 Conn. 902, 157 A.3d 1146 (2017). Whether *Golding* is satisfied presents a question of law over which this court exercises plenary review. See *State* v. *Cruz*, 269 Conn. 97, 104, 848 A.2d 445 (2004).

In the present case, the record is adequate to review the defendant's claim, and the defendant has asserted a claim of constitutional magnitude. Therefore, the first two prongs of *Golding* are satisfied, and the defendant is entitled to *Golding* review. Nevertheless, the defendant is unable to prevail on his claim of constitutional error because, assuming without deciding that a *Doyle* violation exists, the state has established that the alleged constitutional violation was harmless beyond a reasonable doubt. See *State* v. *Smith*, 180 Conn. App. 181, 196, 182 A.3d 1194 (2018) (concluding that defendant's claim failed under fourth prong of *Golding* because, assuming without deciding that *Doyle* violation occurred, it was harmless beyond reasonable doubt); see also id., 197–98 (collecting cases).

The following legal principles are relevant to our analysis under the fourth prong of *Golding*. "Pursuant to *Doyle*, evidence of a defendant's postarrest and post-*Miranda* silence is constitutionally impermissible under the due process clause of the fourteenth amendment. . . . The factual predicate of a claimed *Doyle* violation is the use by the state of a defendant's postarrest and post-*Miranda* silence either for impeachment or as affirmative proof of his guilt. . . . The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. . . . Silence following *Miranda* warnings is insolubly ambiguous because it may be nothing more than a defendant's exercise of his or her *Miranda* rights. . . . Once the government assures a defendant through the issuance of *Miranda* warnings that his silence will not be used against him, it is fundamentally unfair for the state to break that promise by using his silence against him at trial. . . . Comments by the state on a defendant's silence following *Miranda* warnings are not only constitutionally impermissible, but also inadmissible

under the principles of evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Pepper*, 79 Conn. App. 1, 14–15, 828 A.2d 1268 (2003), aff'd, 272 Conn. 10, 860 A.2d 1221 (2004).

"References to one's invocation of the right to remain silent [are] not always constitutionally impermissible, however. . . . Thus, we have allowed the use of evidence of a defendant's invocation of his fifth amendment right in certain limited and exceptional circumstances. . . . In particular, we have permitted the state some leeway in adducing evidence of the defendant's assertion of that right for purposes of demonstrating the investigative effort made by the police and the sequence of events as they unfolded . . . as long as the evidence is not offered to impeach the testimony of the defendant in any way." (Citations omitted; internal quotation marks omitted.) *State* v. *Cabral*, 275 Conn. 514, 524–25, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005); see also *State* v. *Pepper*, supra, 79 Conn. App. 15 (concluding that particular question that merely referenced investigative efforts of police did not constitute *Doyle* violation).

"*Doyle* violations are, however, subject to harmless error analysis. . . . The harmless error doctrine is rooted in the fundamental purpose of the criminal justice system, namely, to convict the guilty and acquit the innocent. . . . Therefore, whether an error is harmful depends on its impact on the trier of fact and the result of the case. . . .

"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. . . . The state bears the burden of demonstrating that the constitutional error was harmless beyond a reasonable doubt. . . . That determination must be made *in light of the entire record* [including the strength of the state's case without the evidence admitted in error]. . . .

"A *Doyle* violation may, in a particular case, be so insignificant that it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict without the impermissible question or comment upon a defendant's silence following a *Miranda* warning. Under such circumstances, the state's use of a defendant's [post-*Miranda*] silence does not constitute reversible error. . . . The [error] has similarly been [found to be harmless] where a prosecutor does not focus upon or highlight the defendant's silence in his cross-examination and closing remarks and where the prosecutor's comments do not strike at the jugular of the defendant's story. . . . The cases wherein the error has been found to be prejudicial disclose repetitive references to the defendant's silence, reemphasis of the fact on closing argument, and extensive, strongly-worded argument suggesting a connection between the defendant's silence and his guilt." (Emphasis added;

internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 717–18, 759 A.2d 995 (2000).

In light of the entire record, we conclude that the alleged *Doyle* violation in the present case was harmless beyond a reasonable doubt. First, the prosecutor did not focus on the defendant's silence and did not engage in repetitive references to the defendant's silence. The limited testimony, which occurred during the redirect examination of Officer McCarthy, and the isolated remark during the state's closing argument that the defendant challenges on appeal were not worded in such a manner to suggest a connection between the defendant's silence and his guilt. *State* v. *Smith*, supra, 180 Conn. App. 200. Rather, the statements related to the efforts made by the police to locate the gun.

Second, the evidence introduced by the state unrelated to the defendant's post-*Miranda* silence established the defendant's guilt beyond a reasonable doubt. By way of summary only, the two witnesses, Perez and Whitley, identified the defendant, with whom they were acquainted from high school, as the perpetrator. Their testimony was consistent with the text messages between Perez and the defendant, which placed the defendant at the Whitley residence and included the highly inculpatory response of the defendant (i.e., "Everybody is food and I want my wallet back boy unless you like shells I'm broke starving hate it had to be you I WANT MY WALLET BACK OR IMMA SEE U cuz"). Moreover, the defendant's wallet was seized from the Whitley residence.

Finally, we note that defense counsel failed to object to the now challenged testimony and remark during closing arguments. See *State* v. *Canty*, 223 Conn. 703, 712, 613 A.2d 1287 (1992) ("trial counsel's failure to object [in a timely manner] indicates that he did not consider [the testimony] to have prejudiced the defendant"). In light of the foregoing, we are satisfied that there is no reasonable possibility that the alleged *Doyle* violation affected the outcome of the defendant's trial. Thus, we conclude that the defendant cannot prevail under *Golding* and, consequently, is not entitled to a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. . . ."

[2] General Statutes § 53a-62 (a) provides in relevant part: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

[3] The court stated in relevant part: "The issue I need to address is whether . . . the prejudicial impact of this evidence outweighs the probative value. So, as far as the image of the guns on his phone given and what the state has indicated that the, at least one of the victims will identify one of the guns as being the one he believes the defendant pulled on him. I would allow this evidence to come in with a proper foundation from the forensic examiner because it is incredibly probative. The fact that . . . [there] was a picture of five weapons [on the defendant's phone], one of which was the weapon the victims claimed was pulled on them is highly probative.

"It is prejudicial, no question about it. Most probative evidence is prejudicial. By definition, if it's probative, it's prejudicial. But that's not the test. The test is . . . whether the prejudicial impact of it outweighs the probative value. And in the court's view, it doesn't because the fact that the defendant had images of weapons on him and one of which was similar to the one pulled, is incredibly probative. It is, for lack of a better word, a smoking gun. But that is—that's what makes it so probative. And it is prejudicial, but not unduly prejudicial and it doesn't outweigh, in the court's view, the prejudice doesn't outweigh the highly probative nature of this evidence.''

[4] The following exchange occurred between the prosecutor and Perez:

"Q. Okay. And can you tell us why you pointed to that weapon?

"A. Because it's the weapon that looks just like the one he pulled out when he robbed me.

* * *

"Q. Okay. So you're telling us that the photo that you have in front of you contains a weapon similar to one the defendant pulled on you and Paige that day?

"A. Yes."

The following exchange occurred between the prosecutor and Whitley:

"Q. Do you recognize any of the weapons in that picture?

"A. Yes.

"Q. And can you point to and sign—circle the weapon you recognize as—sign your name?

* * *

"Q. Now this is your testimony; how do you recognize that weapon?

"A. It was the one he had in his hand that day?

"Q. Are you sure that's the one he had?

"A. It looks very much like it.

* * *

"Q. So what you're saying that in Identification 7, you signed a weapon, you signed near the weapon that you believe the defendant had or similar to?

"A. Yes."

[5] The parties do not dispute that the defendant was taken into custody and given a *Miranda* warning prior to the questioning that forms the basis of the defendant's claim of a *Doyle* violation, namely, the police questioning him about the location of the gun.

[6] We previously have recognized that "*State* v. *Evans*, supra, 165 Conn. 61, has since been superseded by *State* v. *Golding*, supra, 213 Conn. 239–40, and stands, generally, for the same proposition regarding the availability of appellate review of unpreserved claims." *Hinds* v. *Commissioner of Correction*, 151 Conn. App. 837, 857 n.4, 97 A.3d 986 (2014), aff'd, 321 Conn. 56, 136 A.3d 596 (2016). Accordingly, we consider the defendant's claim pursuant to *Golding*.