In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3245

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TANISHA A. BANKS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:18CR61-3 — **Theresa L. Springmann**, *Judge.*

ARGUED SEPTEMBER 22, 2020 — DECIDED DECEMBER 18, 2020

Before SYKES, *Chief Judge*, and FLAUM and ROVNER, *Circuit Judges*.

SYKES, *Chief Judge*. Tanisha Banks was indicted on charges of conspiracy and aiding and abetting a robbery of the United States Post Office in Gary, Indiana, where she worked as a mail clerk. *See* 18 U.S.C. §§ 371, 2114(a). After a five-day trial and four hours of deliberation that stretched to about 8:45 p.m., the jury returned a verdict of guilty on both counts.

At the request of Banks's counsel, the judge polled the jurors. *See* FED. R. CRIM. P. 31(d). The first four affirmed the verdict. The fifth did not. When asked whether the guilty verdict was in fact his verdict, Juror 32 responded, "Forced into." The judge repeated the question. Juror 32 responded that he needed more time. The judge continued the poll, and the remaining jurors affirmed the verdict, singling out Juror 32 as the lone dissenter. The judge then instructed the jurors to continue deliberating and sent them back to the jury room at 9:06 p.m. Twenty-nine minutes later, the jury again returned a guilty verdict. This time the poll confirmed a unanimous decision.

Banks raises several issues on appeal, but her main argument concerns the circumstances surrounding the jury poll, which she contends exerted impermissible pressure on the wavering juror. We agree. The totality of the circumstances—most notably, the dissenting juror's troubling responses to the poll questions, the judge's decision to complete the poll notwithstanding the juror's dissent, the lateness of the hour, and the extreme brevity of the jury's renewed deliberations—were unacceptably coercive. We vacate the judgment and remand for a new trial.

## I. Background

On August 3, 2017, a masked man with a gun robbed the United States Post Office in Gary's Tolleston neighborhood, absconding with almost $6,000 in cash. According to the evidence presented at trial, the robbery was the culmination of a scheme hatched a few days earlier by Banks, who worked as a mail clerk at the Tolleston branch, and James Caffey, her boyfriend. They desperately needed money— they had less than $700 between them and were delinquent

on rent and car payments—so they recruited their friend Leeroy Beck and set the robbery plan in motion. Banks provided information about the layout of the post office and its closing procedures. Caffey supplied a mask and a 9mm handgun and was the getaway driver. Beck committed the robbery using Caffey's gun.

A grand jury indicted Banks, Caffey, and Beck on charges of conspiracy to rob a post office, 18 U.S.C. § 371, and robbing or aiding and abetting the robbery of mail, money, or property of the United States, *id.* § 2114(a). The indictment also charged Beck and Caffey with brandishing and aiding and abetting the brandishing of a firearm during a crime of violence. *Id.* § 924(c)(1)(A). Beck pleaded guilty to the firearm count and agreed to testify for the government.

The case against Banks and Caffey proceeded to trial, which spanned five days and featured testimony from Beck and the government's lead investigator, among other evidence. The investigator's testimony included statements from several witness interviews, prompting hearsay objections from the defense. The objections were overruled and Banks challenges those rulings on appeal. We can omit the details because the juror-coercion issue resolves the appeal in Banks's favor, so there's no need to address the hearsay objections. Banks also challenges Beck's testimony as incredible as a matter of law, but again we have no need to address that issue. We focus our attention on the circumstances surrounding the jury's deliberations, the jury poll, and the aftermath of Juror 32's dissent.

Before submitting the case to the jury, the judge gave this instruction regarding the requirement of a unanimous verdict:

> The verdict must represent the considered judgment of each juror. Your verdict, whether it is guilty or not guilty, must be unanimous. You should make every reasonable effort to reach a verdict. In doing so, you should consult with each other, express your own views and listen to your fellow jurors' opinions[.] [D]iscuss your differences with an open mind[.] [D]o not hesitate to re-examine your own view and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence just because [of] the opinions of your fellow jurors or just so that there could be a unanimous verdict.

The jurors retired to deliberate at 4:45 p.m. Four hours later they returned to the courtroom and announced a verdict finding both defendants guilty of conspiracy and aiding and abetting the robbery, and acquitting Caffey on the firearm charge.

Banks's counsel asked the judge to poll the jury. The judge asked each juror individually, "[I]s this your verdict as to Ms. Banks?" The first four jurors responded, "Yes." When the next juror was polled, the following colloquy ensued:

> THE COURT:      Juror No. 32, is this your verdict as to Ms. Banks?
> JUROR NO. 32:  Forced into.
> THE COURT:      Is this your verdict?
> JUROR NO. 32:  I suppose so.

|              |                                                                          |
| ------------ | ------------------------------------------------------------------------ |
| THE COURT:   | Is it your verdict that she is guilty on both Counts One and Two?         |
| JUROR NO. 32: | I don't know how to answer that.                                         |
| THE COURT:   | I'm asking you to answer that at this time.                              |
| JUROR NO. 32: | I feel like I need more time.                                            |
| THE COURT:   | Let me go finish the poll, and then I'll come back to you.               |

The judge polled the remaining jurors, and each affirmed the verdict.

The judge then called a sidebar with counsel and noted that the verdict did not sound unanimous. Defense counsel agreed. The government added, "I think we have to send them back." Caffey's counsel asked the judge to poll the jury regarding the verdict on the counts against Caffey. The judge did so. All jurors affirmed the verdict as to Caffey, and the court accepted it.

The judge then returned to the unanimity problem in the verdict against Banks and sent the jurors back to the jury room to continue deliberating with this instruction:

> At this time, ladies and gentlemen of the jury, because the verdict that you have returned … with regard to Ms. Tanisha Banks does not appear to be unanimous given the polling of the jury, the [c]ourt is going to direct that you return to your deliberations with regard to Ms. Banks at this time—it's about five minutes after 9:00—and to continue your best, good

faith efforts in doing so to attempt to come to a unanimous verdict with regard to Ms. Banks.

The judge asked if counsel had anything to add regarding this instruction and counsel declined.

Deliberations resumed at 9:06 p.m. Just 29 minutes later, the jury returned a verdict finding Banks guilty on both counts. The judge again polled the jury, and this time all jurors confirmed that the verdict was unanimous.

## II. Discussion

"Any criminal defendant … being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). Impermissible coercion occurs "when jurors surrender their honest opinions for the mere purpose of returning a verdict." *United States v. Williams*, 819 F.3d 1026, 1030 (7th Cir. 2016) (quotation marks omitted). We assess the risk of juror coercion based on the totality of the circumstances from the juror's perspective. *Id.* The inquiry is objective and focuses on "the situation facing the juror"; the subjective intent of the judge and the juror are irrelevant. *Id.*; *accord United States v. Blitch*, 622 F.3d 658, 668 (7th Cir. 2010).

Banks did not object to the judge's approach to Juror 32, so we review the claim of impermissible coercion for plain error. FED. R. CRIM. P. 52(b). Under the plain-error standard, the defendant ordinarily must establish that an "obvious" error occurred that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Triggs*, 963 F.3d 710, 714 (7th Cir. 2020). But juror coercion, if it occurs, is a grave error. *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per

curiam) ("[T]he principle that jurors may not be coerced into surrendering views conscientiously held is so clear as to require no elaboration." (quotation marks omitted)). Accordingly, if the totality of the circumstances presents a clear impermissible risk of juror coercion, we presume that the error prejudiced the defendant and seriously affected the fairness of the proceedings. *Williams*, 819 F.3d at 1031.

We begin with the circumstance most indicative of coercion: the dialogue between the judge and Juror 32. Juror 32's initial response to the judge's polling question was startling. When the judge asked if the guilty verdict against Banks was, in fact, his verdict, he replied with two striking words: "Forced into." This was far more than a simple "no." Indeed, the words "forced into" amount to Juror 32 telling the court that he was coerced into the verdict.

To be clear, we do not hold that this response alone necessitated a mistrial. The rules of procedure give the trial judge the discretion to either mistry the case or order further deliberation when the jury poll reveals a lack of unanimity. *See* FED. R. CRIM. P. 31(d). But Juror 32's response was alarming enough that an immediate sidebar with counsel was warranted.

Instead, the judge asked several follow-up questions that only pressed Juror 32 further. Those questions and answers did little to lessen the pressure at the time, and they do nothing to assuage our concerns now. After Juror 32 said, "Forced into," the judge again asked him, "Is this your verdict?" And he responded, "I suppose so." The government characterizes this response as suggesting that Juror 32 agreed with the guilty finding. That hardly seems the case. At best, "I suppose so" suggests that Juror 32 is unsure of his

verdict. At worst, it implies he is giving up—"surrender[ing his] honest opinions for the mere purpose of returning a verdict." *Blitch*, 622 F.3d at 668 (quotation marks omitted). Either way, "I suppose so" certainly does not convey *affirmance* of the verdict. When asked a third time, Juror 32 said, "I don't know how to answer that." We do not need to speculate about the implications of this answer. The purpose of a jury poll is to confirm unanimity, *Williams*, 819 F.3d at 1031, and this response decidedly did not do that.

More concerning is the judge's next request: "I'm asking you to answer that at this time." The government argues that this was a neutral inquiry intended only to clear up the uncertainty in Juror 32's responses. We see it differently. By this time there was no uncertainty about Juror 32's position. He had already said he was "forced into" the verdict, and he did not retreat from that position when asked two more times. Whether the judge intended to merely clear up the uncertainty is irrelevant. Our inquiry focuses on the juror's perspective. *Id.* at 1030. Viewed through that lens, continuing to press Juror 32 for a different answer was unnecessarily coercive.

The way in which the judge conducted the jury poll also informs our analysis. Although criminal defendants are entitled to poll the jury, the judge must conduct the poll in a manner that minimizes its coercive effect. *Id.* at 1031. Banks argues that the judge's decision to complete the poll after Juror 32 rejected the verdict unduly increased the pressure on him by revealing him as the lone dissenter.

Continuing to poll the jury after one juror disagrees with the verdict does not automatically amount to reversible coercion. *United States v. Carraway*, 108 F.3d 745, 751 (7th Cir.

1997); *see also Williams*, 819 F.3d at 1032 n.2 (collecting out-of-circuit cases). After all, the purpose of polling is to "ferret out" dissenting jurors, *Lyell v. Renico*, 470 F.3d 1177, 1184 (6th Cir. 2006), and polling always risks revealing a lone holdout because the last juror to be polled could reject the verdict after the first 11 affirm it, *Williams*, 819 F.3d at 1031. Revealing the jury's numerical division through polling therefore does not equate to inquiring into the numerical division of a deadlocked jury—a per se reversible error. *See Brasfield v. United States*, 272 U.S. 448, 450 (1926); *Lyell*, 470 F.3d at 1183–84 (emphasizing the differences between a jury poll and an inquiry into the jury's division).

But our decision in *Williams* also recognized that continued polling in this situation is relevant to the coercion inquiry because it undoubtedly puts pressure on the holdout juror. 819 F.3d at 1032–33. In most cases there is "little point to continuing to poll … because one holdout suffices to send the jury back to deliberate." *Lyell*, 470 F.3d at 1183. That is why we have endorsed the "wise" approach of terminating the poll as soon as a lack of unanimity is revealed. *Williams*, 819 F.3d at 1032 & n.3. Doing so avoids revealing the number and identity of any dissenting jurors, reducing the poll's coercive effect.

The judge here did not follow that advice. Had she done so, no one (save for the other jurors) would know whether Juror 32 was alone in his disagreement or one of several dissenters. We do not mean to suggest that the judge intended to pressure Juror 32; quite the contrary, we are confident that she did not. But her intent is immaterial. What matters is whether the manner in which the judge conducted the poll

unnecessarily risked coercion. *Id.* at 1033. We conclude that
it did.

The government argues that the risk of coercion attribut-
able to the jury poll is less here than it was in *Williams*.
There, a juror answered "no" when asked if the guilty
verdict was indeed her verdict. *Id.* at 1028. But the judge
apparently did not hear the juror's response and simply
continued with the poll—revealing the dissenter as the lone
holdout—and then dismissed the jury, believing the verdict
was unanimous. *Id.* When counsel brought the issue to the
judge's attention, he polled the jury a second time. We held
that these "additional coercive actions" rendered the contin-
ued polling an obvious error. *Id.* at 1032–33 (emphasis
omitted).

By contrast, here the judge polled the jury only once and
did not inadvertently dismiss the jury after the first poll. The
government emphasizes this distinction, but it's not disposi-
tive. We assess juror coercion based on the totality of the
circumstances, and the jury poll is only one factor in that
inquiry.

The use of a supplemental instruction after a jury poll re-
veals division can help guard against an impermissibly
coercive atmosphere. We have not mandated a specific jury
instruction in this situation, *id.* at 1034, and we do not do so
today. But a robust cautionary instruction can lessen the
pressure on a dissenting juror. *Williams* emphasizes the
importance of reminding jurors "not to surrender their
honest beliefs" just to reach a unanimous verdict. *Id.*

The judge's supplemental instruction lacked this im-
portant reminder. To be sure, the judge did ask the jury to

continue deliberating in "good faith." But the heart of the coercion inquiry is whether a juror "surrender[s his] honest opinions for the mere purpose of returning a verdict." *Blitch*, 622 F.3d at 668 (quotation marks omitted). That's why the so-called *Silvern* charge—the instruction given to a deadlocked jury in this circuit—reminds jurors not to "surrender [their] honest beliefs about the weight or effect of evidence just because of the opinions of [their] fellow jurors or just so that there can be a unanimous verdict." *Pattern Criminal Jury Instructions of the Seventh Circuit* No. 7.03 (2020). The likelihood of coercion would have been diminished had the judge's supplemental instruction included this important warning.

The government argues that because the judge gave the *Silvern* charge with the general instructions before the jury commenced deliberations, she did not need to do so again. This argument misses the point. The supplemental instruction comes "at a very sensitive moment—immediately after [a juror is] identified as the lone dissenter." *Williams*, 819 F.3d at 1033. Cautioning jurors *at that moment* that they should not surrender their honest beliefs for the sake of reaching a unanimous verdict goes a long way toward mitigating the risk of impermissible coercion.

The timing of the judge's instruction to continue deliberating also increased the likelihood of coercion. The jurors reached a verdict at about 8:45 p.m., after listening to hours of closing argument at the conclusion of a five-day trial and deliberating for about four hours. After the first poll revealed a dissenting juror, the judge returned the jurors to the jury room at 9:06 p.m. with an instruction to continue deliberations. Having just been identified as the lone holdout,

Juror 32 no doubt well understood that he was the only person preventing his fellow jurors, the attorneys, and the judge from going home for the night. Under those circumstances any dissenting juror would have felt pressure to surrender his beliefs. *See United States v. Fiorilla*, 850 F.2d 172, 176–77 (3d Cir. 1988) (noting the judge's decision to dismiss the jury for the day after a jury poll revealed a lone dissenter lessened the risk of coercion by "remov[ing the dissenting juror] from the immediate 'attacks' of his peers"); *cf. Blitch*, 622 F.3d at 670–71 (holding that the court's instruction to continue deliberating given around the time the court had earlier promised the jury they would be able to leave for the day was unduly coercive).

We conclude with a few words about the length of the jury's renewed deliberations. A verdict returned very quickly after the jury is given a supplemental instruction to continue deliberations may signal that a juror was coerced. *Lowenfield*, 484 U.S. at 240; *Williams*, 819 F.3d at 1034. While longer deliberations indicate the jurors took time to "reexamine [their] own views" and "consult with one another," *United States v. Silvern*, 484 F.2d 879, 883 (7th Cir. 1973) (en banc), shorter deliberations may support an inference of a "coercive effect of the majority running roughshod over the minority," *United States v. De Stefano*, 476 F.2d 324, 337 (7th Cir. 1973).

The circumstances support the latter inference here. The jury returned its second verdict against Banks just 29 minutes after being instructed to continue deliberating. That rapid turnaround suggests that Juror 32 may have felt pressured into surrendering his views for the sole purpose of returning a unanimous verdict.

The government points to cases involving shorter deliberations in which the court held that there was no coercion. *See Amos v. United States*, 496 F.2d 1269, 1272–73 (8th Cir. 1974) (25 minutes); *United States v. Brooks*, 420 F.2d 1350, 1354 (D.C. Cir. 1969) (20 minutes). But neither *Amos* nor *Brooks* expressly considered the deliberation time in their analyses. In contrast, the Supreme Court in *Lowenfield* explicitly recognized that a 30-minute supplemental deliberation "suggests the possibility of coercion." 484 U.S. at 235, 240. We likewise conclude that the 29-minute deliberation suggests impermissible coercion.

### III. Conclusion

The totality of the circumstances here created a clear and obvious risk of juror coercion. Juror 32's "forced into" response to the poll question is powerful evidence of impermissible coercion. And the circumstances that followed—the judge's repeated pressing for another answer, the incomplete cautionary instruction, the late hour, and the brief duration of the renewed deliberations—only amplify our concern. Because the risk of juror coercion was clear and obvious, we presume that the error prejudiced Banks and seriously affected the fairness of the proceedings. *Williams*, 819 F.3d at 1031. The judgment must be vacated.

VACATED AND REMANDED