STATE OF CONNECTICUT *v.* BOBBY J. BELL
(4887)

BORDEN, BIELUCH and O'CONNELL, Js.

Argued November 10, 1987—decision released February 9, 1988

*Martin Zeldis,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Nancy L. Walker,* special assistant state's attorney, for the appellee (state).

BIELUCH, J. The defendant appeals from the judgment of conviction, after a jury trial, of robbery in the third degree in violation of General Statutes § 53a-136,[1] and assault of a victim sixty years or older in the third degree in violation of General Statutes § 53a-61a.[2] The

---

[1] General Statutes § 53a-133 defines robbery as follows: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

The defendant was convicted under "[General Statutes] Sec. 53a-136. ROBBERY IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of robbery in the third degree when he commits robbery.

"(b) Robbery in the third degree is a class D felony."

[2] "[General Statutes] Sec. 53a-61a. ASSAULT OF A VICTIM SIXTY OR OLDER IN THE THIRD DEGREE. CLASS A MISDEMEANOR. (a) A person is guilty of assault of a victim sixty or older in the third degree, when he commits assault in the third degree under section 53a-61 and the victim of such assault has attained at least sixty years of age or is blind or physically disabled, as defined in section 1-1f.

"(b) No person shall be found guilty of assault in the third degree and assault of a victim sixty or older in the third degree upon the same inci-

defendant claims: (1) that the trial court erred by denying his motion to suppress the victim's out-of-court identification, and in admitting her subsequent in-court identification when such identifications were allegedly unnecessarily suggestive and unreliable; (2) that the prosecutor's misconduct deprived him of a fair trial when, in his closing argument to the jury, he attacked the credibility of a defense alibi witness by misstating facts in evidence and by making reference to other facts not in evidence; and (3) that the trial court erred by accepting as unanimous a verdict of guilty as to the charge of robbery in the third degree when in fact such verdict was not unanimous. We find error only as to the third claim of error.

The jury could reasonably have found the following facts. The defendant was arrested in the early morning hours of September 11, 1984, in connection with the robbery of a sixty-two year old woman in the Westville section of New Haven on the prior evening. The victim was assaulted and robbed as she was about to disembark from her automobile upon arriving home at approximately 11:30 p.m. Her assailant, who had come out of a nearby car, forced his way into the victim's car, struck her and then stole her pocketbook.

The entire incident lasted approximately two minutes, during which time the scene was illuminated by nearby street lights and by the dome light of the victim's car. As the car in which her assailant was a passenger pulled away after the incident, the victim, who was not able to see the car's license plate because the marker plate light was broken, took notice of the car's description. The victim was not able to get a good look at the driver of the car as he remained in the vehicle

dent of assault but such person may be charged and prosecuted for both offenses upon the same information.

"(c) Assault of a victim sixty or older in the third degree is a class A misdemeanor."

throughout the assault and robbery. After the police were called to the scene, the victim gave a description of her assailant and his car.

An automobile in which the defendant was a passenger was stopped by the police soon thereafter at approximately 1:00 a.m. in the same general vicinity in which the assault and robbery had occurred. It matched the victim's description of the car from which her assailant had made his attack upon her. The victim, who was then at the police station, was taken by the police to the location where the defendant had been stopped. She identified the defendant as her assailant from a distance of approximately ten feet. The victim remained in a police cruiser during the identification process. The defendant was illuminated by street lights and by a spotlight from another cruiser. The victim also identified the car in which the defendant was a passenger as the same car that was at the scene of her assault and robbery.

The defendant, who had entered pleas of not guilty, presented an alibi defense at trial. The defendant testified that he had spent most of the evening of September 10, 1984, in the company of his girlfriend, his sister and his sister's boyfriend. All three testified at trial as alibi witnesses. The prosecutor questioned the defendant's sister about whether she spoke to the police after learning that her brother had been arrested for crimes which were committed on the evening she was allegedly with him and others at her house. The question was withdrawn following an objection by the defendant. During his summation to the jury, the prosecutor stated the elements of that question as fact.[3]

---

[3] The prosecutor's comments were as follows: "The defendant's sister . . . she does not even go to the police. Here is Priscilla Bell, the defendant's sister, who learns the next day that the defendant is accused of a crime which occurred while Miss Bell says that he was with her and she does not call the police. She does not go down to the police department. She did not give a statement, nothing. She did not tell anyone."

The defendant did not object to the prosecutor's closing argument.

Upon return of guilty verdicts on both counts charged, the jury was polled. During the poll of the jury, one juror appeared to equivocate regarding her verdict on the robbery charge until upon subsequent questioning by the trial judge and clerk she reported a verdict of guilty.

The defendant was convicted as charged, and was sentenced on the robbery charge to a term of three years, suspended after sixteen months, with three years probation, and on the assault charge to a concurrent term of one year. This appeal followed.

I

In his initial claim of error, the defendant asserts that the trial court erred in failing to suppress the out-of-court identification by the victim which was the result of a one-on-one show-up. The defendant contends that the identification resulted from an unnecessarily suggestive police procedure and was unreliable, and that admission of this identification, as well as the victim's subsequent in-court identification of him based upon her out-of-court identification, violated his constitutional rights to due process. We disagree.

The determination of whether an identification procedure offends a defendant's due process rights depends on (1) whether the procedure was impermissibly and unnecessarily suggestive, and (2) if so, whether the identification was nevertheless reliable based on the totality of the circumstances. *State* v. *Pollitt,* 205 Conn. 132, 162, 521 A.2d 125 (1987), and cases cited therein. " 'To prevail in his claim "the defendant must demonstrate that the trial court erred in *both* of its determinations regarding 'suggestiveness' and 'reliability' of identifications in the totality of the circumstances."

(Emphasis in original.) *State* v. *Hinton,* [196 Conn. 289, 292–93, 493 A.2d 836 (1985)].' *State* v. *Mayette,* 204 Conn. 571, 581, 529 A.2d 673 (1987)." *State* v. *Pollitt,* supra.

"While a one-on-one confrontation between a victim of a crime and a person whom the police present as a suspect is presumptively suggestive, it does not automatically follow that such a show-up is impermissibly suggestive. *State* v. *Collette,* 199 Conn. 308, 310, 507 A.2d 99 (1986). Prompt on-the-scene confrontations tend under some circumstances to ensure accurate identifications and the benefit of promptness not only aids reliability but permits a quick release of an innocent party if there is no positive identification, allowing the police to resume the investigation with only a minimum of delay. *State* v. *DeJesus,* 7 Conn. App. 309, 315–16, 508 A.2d 463 (1986)." *State* v. *Sims,* 12 Conn. App. 239, 242, 530 A.2d 1069 (1987).

The show-up in this case occurred less than two hours after the assault and robbery were committed. The defendant and the car in which he was a passenger fit the descriptions given to the police by the victim, and both were found by the police in the area of New Haven where the crimes had occurred. The victim, who had given a complete description of her assailant to the police, was unable before then to identify her attacker from photo arrays within the short interval before his apprehension, finding the process "overwhelming." Under the circumstances of this case, the one-on-one show-up between the victim and the defendant was reasonably necessary and a permissible investigative technique. *State* v. *Sims,* supra, 242–43; see also *State* v. *Mitchell,* 204 Conn. 187, 198–99, 527 A.2d 1168 (1987); *State* v. *Collette,* supra, 311. This conclusion renders further analysis unnecessary. *State* v. *Pollitt,* supra. The trial court did not err in refusing to suppress the evidence of the defendant's identification at confronta-

tion with the victim and in court. See *State* v. *Pollitt,* supra, 164–65; *State* v. *Mayette,* 583–84; *State* v. *Sims,* supra.

## II

The defendant also claims that the prosecutor's misconduct deprived him of a fair trial when, in his summation to the jury, he attacked the credibility of a defense alibi witness by misstating testimonial facts and by making reference to other facts not in evidence. The defendant, who did not object or take exception to the prosecutor's closing argument at trial, now seeks review of this claim under the second prong of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973) (review will be made when an adequate record supports a claim of a clear deprivation of a fundamental constitutional right), and the related doctrine of plain error noticed "in the interests of justice." Practice Book § 4185.

Having failed to preserve his claim of prosecutorial misconduct at trial, the defendant is not entitled to review of his claim under either *State* v. *Evans,* supra, or the plain error doctrine. "Only in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* supra, 69.

"Ordinarily, where a criminal defendant does not object and take exception to allegedly prejudicial remarks of the state's attorney, either at the time they were made or at the close of argument, he waives his right to press the claimed error on appeal. *State* v. *Lubesky,* 195 Conn. 475, 484, 488 A.2d 1239 (1985); *State* v. *Malley,* 167 Conn. 379, 387, 355 A.2d 292 (1974). Where counsel fails to object or to request a curative charge 'we have presumed that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized.

*State* v. *Lubesky,* supra; *State* v. *Falcone,* 191 Conn.
12, 23 n.13, 463 A.2d 558 (1983).' *State* v. *Tyler-Barcomb,* 197 Conn. 666, 673, 500 A.2d 1324 (1985)."
*State* v. *Chace,* 199 Conn. 102, 108, 505 A.2d 712 (1986).

On the record before us, we cannot say that the prosecutor's remarks in this case were so abusive or prejudicial as to support a claim that the defendant has
" 'clearly been deprived of a fundamental constitutional right and a fair trial.' *State* v. *Evans,* supra." (Footnote omitted.) *State* v. *Chace,* supra. In cases where our courts have denied *Evans* review, the claimed misconduct consisted of isolated and brief episodes, and did not reveal a pattern of conduct repeated throughout the trial. The prosecutorial misconduct was also not blatantly egregious. See *State* v. *Chace,* supra, 107; *State* v. *Tyler-Barcomb,* supra, 673; *State* v. *Lubesky,* supra, 483–84. As in those cases, we conclude that the record here does not adequately support the defendant's claim that he was clearly deprived of a fundamental constitutional right and a fair trial so as to warrant review under *Evans.* See *State* v. *Chace,* supra, 108 n.2; *State* v. *Peterson,* 13 Conn. App. 76, 81, 534 A.2d 1237 (1987); cf. *State* v. *Williams,* 204 Conn. 523, 535–40, 529 A.2d 653 (1987) (review under *Evans* of claim of serious misconduct by prosecutor).

The record also fails to support the defendant's argument that his claim of prosecutorial misconduct may be reviewed under the plain error doctrine of Practice Book § 4185. This rule provides that this court "may in the interests of justice notice plain error not brought to the attention of the trial court." See also Practice Book § 2000. We are not convinced that there was any manifest injustice under all of the circumstances of this case. In addition, "[s]uch review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceed-

ings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). The defendant has not established that his claim meets the standard for review under the plain error doctrine. The defendant has, therefore, waived his right to raise the claim of prosecutorial misconduct on appeal.

## III

In his final claim on appeal, the defendant maintains that the trial court erred by accepting as unanimous the verdict of guilty to the charge of robbery in the third degree; General Statutes § 53a-136; when in fact such verdict was not unanimous. We agree and, accordingly, find error.

Following the announcement of the guilty verdict to the charges of robbery in the third degree and assault of a victim sixty years or older in the third degree, the six person jury was asked as a group, as part of the established rubric, if the verdicts were unanimous and responded in the affirmative. The defendant requested and was granted an individual poll of the jury. The third juror polled was questioned first by the clerk, and then by the court. After equivocating as to her verdict on the robbery charge, she finally indicated to the court that her verdict was guilty.[4]

---

[4] The exchange between the juror, the court and the clerk was as follows:

"The Clerk: [I]n File No. 234464, *State of Connecticut* v. *Bobby Bell,* what say you . . . is he guilty or not guilty of the crime of robbery in the third degree which he stands charged in the first count?

"The Juror: Do I have to answer that as a guilty or can I say something?

"The Court: Ma'am, all that you can respond to is that your verdict.

"The Clerk: Is your verdict to the first count of robbery in the third degree guilty or not guilty?

"The Juror: I can't say.

"The Court: What the Clerk is inquiring of you and what the Court wants to know, is your verdict on the first count that the defendant is guilty or not guilty?

"The Juror: I said guilty to attempted larceny.

"The Clerk: Well, let me—

The defendant's claim, although not raised at trial, is reviewable under *State* v. *Evans,* supra. The defendant asserts that he was deprived of his right, under the sixth amendment to the United States constitution, to a unanimous verdict from the six member jury. He claims the deprivation of a fundamental right and contests the fairness of his trial in that respect. We have held that a defendant's claim that a verdict of guilty was not unanimous falls into the category of cases that may be reviewed under the *Evans* bypass. See *State* v. *Diorio,* 12 Conn. App. 74, 80, 529 A.2d 1320, cert. denied, 205 Conn. 813, 532 A.2d 587 (1987); *State* v. *Lo Sacco,* 11 Conn. App. 24, 32, 525 A.2d 977, cert. denied, 204 Conn. 812, 528 A.2d 1158 (1987); *State* v. *Edwards,* 10 Conn. App. 503, 511, 524 A.2d 648, cert.

"The Court: One moment, please.

"The Clerk: First count that he is charged with—

"The Juror: Yes.

"The Clerk: —is robbery in the third degree.

"The Juror: Yes.

"The Clerk: As to that count, which is robbery in the third degree, the first count, is your verdict guilty or not guilty?

"The Juror: Attempted robbery, guilty of that.

"The Clerk: Robbery in the third degree is the count charged.

"The Juror: I know what you are saying.

"The Clerk: As to the second count—

"The Court: I am not satisfied with the juror's response. Did you understand the first question?

"The Juror: Yes, I did, sir.

"The Court: Let's do it all over again. One moment, please, it's very important.

Put the question to the juror again with regard to the first count.

"The Clerk: In file No. 234464, *State of Connecticut* v. *Bobby Bell,* what say you . . . is he guilty or not guilty of the crime of robbery in the third degree which he stands charged in the first count?

"The Juror: Guilty.

"The Clerk: In File No. 234464, *State of Connecticut* v. *Bobby Bell,* what say you . . . is he guilty or not guilty of the crime of assault of a victim sixty years of age or older in the third degree which he stands charged in the second count?

"The Juror: That I will say guilty to.

"The Court: Thank you; you may be seated."

denied, 204 Conn. 808, 528 A.2d 1155 (1987); *State* v. *Milledge,* 8 Conn. App. 119, 122, 511 A.2d 366 (1986); *State* v. *Benite,* 6 Conn. App. 667, 671, 507 A.2d 478 (1986).

It is undisputed that the sixth amendment to the United States constitution guarantees a defendant in a criminal case the right to a unanimous verdict if his jury consists of only six members. *Burch* v. *Louisiana,* 441 U.S. 130, 134, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979); *State* v. *Diorio,* supra, 80–81; *State* v. *Lo Sacco,* supra, 33. Our criminal procedure requires that all jury verdicts be unanimous; Practice Book § 867;[5] and provides that a jury may be polled to determine unanimity of verdict at the request of either party, or upon the court's own motion. Practice Book § 869.[6]

The facts of this case clearly demonstrate that the polled juror, after first expressing doubt by her inability to state a verdict to the robbery count, was led by repeated pollings by the clerk at the court's insistence to five progressive responses culminating in a verdict of guilty to the charge. Such conducement of the juror's verdict deprived the defendant of his right to a unanimous verdict. This polling process of the juror was improper.

In response to what her verdict was on the robbery charge, the juror initially indicated that she did not want to answer "that as a guilty," but that she wanted

---

[5] Practice Book § 867 provides in relevant part: "The verdict shall be unanimous and shall be announced by the jury in open court. . . ."

[6] "[Practice Book] Sec. 869. ——POLL OF JURY

"After a verdict has been returned and before the jury have been discharged, the jury may be polled at the request of any party or upon the judicial authority's own motion. The poll shall be conducted by the clerk of the court by asking each juror individually whether the verdict announced is his verdict. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or they may be discharged."

to say something further by way of explanation. She was then told by the court that she could only respond by her verdict. When polled by the clerk again for her verdict on the robbery charge, she now responded that "I can't say." At that moment, the court should have realized that the juror still had some question about the defendant's guilt of the robbery charge. The court thereupon should have responded to this situation by either sending the jury back to the jury room for further deliberations, or declaring a mistrial on this charge and proceeding to complete the polling of the jury on the assault count and discharging the jury. See Practice Book § 869.

The court did neither of these. Instead of exercising one of its two options, the court continued with the polling of the juror, telling her that both the clerk and the court wanted her to say if her verdict on the first count was guilty or not guilty. The juror's response at that point suggests that it was forced by the pressure upon her for a verdict. She responded, "I said guilty to attempted larceny," when such an offense had not been submitted to the jury for its deliberation.[7] When the clerk thereafter asked for her verdict on the first count of robbery in the third degree, she pointedly answered, "attempted robbery, guilty of that." When the clerk then informed her, "robbery in the third degree is the count charged," she matter-of-factly answered, "I know what you are saying." As the clerk thereafter started to poll the juror on the second count, the court interjected by saying: "I am not satisfied with the

---

[7] The defendant was initially charged with three counts: robbery in the second degree, in violation of General Statutes § 53a-135; assault of a victim sixty years of age or older in the second degree, in violation of General Statutes § 53a-60b; and larceny in the second degree, in violation of General Statutes § 53a-123. As a substitute information the larceny offense was dropped and he was brought to trial on robbery in the third degree, in violation of General Statutes § 53a-136; and assault of a victim sixty years of age or older in the third degree, in violation of General Statutes § 53a-61a.

juror's response. Did you understand the first question?" After the juror indicated "Yes, I did, sir," the court ordered: "Let's do it all over again. One moment, please, it's very important. Put the question to the juror again with regard to the first count." On this final poll, the juror simply replied: "Guilty." Thereafter the poll of the juror on the second count was followed with a direct and unambiguous response in sharp contrast to the earlier poll: "That I will say guilty to." The contrast that the juror expressed in this unqualified answer to the poll on the second count could only have been made to highlight her prior doubt about her verdict to the robbery count.

Under the situation that presented itself to the trial court during the polling of the third juror, the court should have followed the mandate of Practice Book § 869 and directed the jury to retire for further deliberations as to the first count or discharged the jurors from further duties and declared a mistrial as to that count. *Green* v. *Zant,* 738 F.2d 1529 (11th Cir. 1984); *United States* v. *Spitz,* 696 F.2d 916 (11th Cir. 1983); *United States* v. *Lawrence,* 618 F.2d 986 (2d Cir. 1980); *United States* v. *Edwards,* 469 F.2d 1362 (5th Cir. 1972); *United States* v. *McCoy,* 429 F.2d 739 (D.C. Cir. 1970). See *State* v. *Gullette,* 3 Conn. Cir. Ct. 153, 209 A.2d 529 (1964). In this case, the polled juror showed doubt and uncertainty about her verdict from the start of the polling. Although the court made certain that she understood the question, the juror had to be asked for her verdict on the robbery charge five separate times. She indicated doubt on all but the last occasion when finally she answered "guilty." This juror's guilty verdict on the robbery count in her individual poll was conduced by the trial court during the polling process. The defendant thereby was denied his right to a unanimous verdict on the charge of robbery in the third degree. *Burch* v. *Louisiana,* supra; *State* v. *Diorio,* supra; *State* v. *Lo Sacco,* supra.

The defendant also asks us to consider his claim, raised for the first time on appeal, that the guilty verdict on the assault charge should also be set aside. Specifically, the defendant argues that if the jury had been properly instructed to deliberate further, it "would have" reconsidered its verdict as to both charges because "it is certainly possible" that the doubting juror could have reconsidered her verdict of guilty on the assault charge as well as the robbery charge and convinced the other jurors with her thoughts.

As we have stated, a lack of unanimity claim falls within the category of cases that will be reviewed under the *Evans* bypass rule. *State* v. *Evans,* supra. There is, however, no merit to the defendant's exorbitant tandem claim. The record clearly indicates that the juror expressed doubt only as to her verdict on the robbery charge. She emphatically confirmed her guilty verdict on the second or assault count. We will not speculate, as the defendant would have us do, as to what might have happened had the jury been directed to retire for further deliberations on the robbery count. There was no lack of unanimity on the assault charge and no necessity for further deliberations on that count.

There is error in part, the judgment of conviction as to robbery in the third degree is set aside, and the case is remanded for a new trial on that count only.

In this opinion the other judges concurred.