******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* JOHN BOLTON
## (SC 20856)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Convicted of murder and criminal possession of a firearm in connection with the shooting death of the victim, the defendant appealed to this court. After the jury foreperson announced that the jury had reached a verdict and the jurors collectively confirmed their guilty verdict, defense counsel asked that the jurors be polled individually. The first five jurors of the twelve person jury confirmed the verdict, but the sixth juror, S.C., expressed equivocation and disagreement with the guilty verdict. At that point, the court stopped polling the jurors and excused the jurors in order to consult with counsel. The court ultimately directed the jurors to resume deliberations, and, subsequently, the jurors returned a unanimous guilty verdict. The defendant claimed, inter alia, that the trial court had abused its discretion when it denied his motion for a mistrial following the court's decision to stop polling the jurors and to direct them to resume deliberations after polling S.C. *Held*:

The trial court did not abuse its discretion in denying the defendant's motion for a mistrial, as the record revealed that there was no impermissible coercion of S.C.

The circumstances of this case were not indicative of potential coercion beyond the pressure inherent in the ordinary process of reaching a unanimous jury verdict, and, without other evidence indicating coercion, such as misconduct or other negative reaction by the other jurors to S.C.'s dissent, the fact that S.C. expressed equivocation or disagreement with the verdict relatively early in the poll, took a break to relieve tensions, and then returned to deliberate with her fellow jurors without incident demonstrated that S.C. had not abandoned her honest conviction in ultimately voting to find the defendant guilty.

Moreover, on the basis of the circumstances before it, and after soliciting input from counsel, the trial court opted for a minimal and neutral course of action in order to allow the deliberation process to continue, and, although it would have been within the court's discretion to give a Chip Smith charge, encouraging jurors to reach a unanimous verdict, it was not necessary to do so.

The defendant could not prevail on his unpreserved claim that the final verdict violated the constitutional requirement that a jury verdict be both unanimous and free from coercion on the ground that there was an unacceptable risk that S.C. had been coerced into assenting to a guilty verdict, as

the alleged constitutional violation did not occur or deprive the defendant of a fair trial, and, therefore, the defendant's claim failed under the third prong of *State* v. *Golding* (213 Conn. 233), as modified by *In re Yasiel R.* (317 Conn. 773).

There was no evidence in the record indicating that S.C.'s decision with respect to the jury's verdict was the product of coercion, the trial court's decision to direct the jurors to resume the deliberation process after S.C. had indicated her equivocation or disagreement with the verdict did not coerce S.C. into reaching a guilty verdict, and a Chip Smith charge was not required to address juror coercion.

This court declined to review the defendant's unpreserved claim that the trial court had violated the applicable rule of practice (§ 42-31) when it discontinued the jury poll following S.C.'s equivocation or disagreement with the verdict, as that claim was not of constitutional magnitude, and, therefore, it failed under the second prong of *Golding*.

Argued May 14—officially released July 22, 2025

*Procedural History*

Substitute information charging the defendant with the crimes of murder and criminal possession of a firearm, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Gustafson, J.*; verdict of guilty; thereafter, the court, *Gustafson, J.*, denied the defendant's motion for a mistrial and rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed.*

*Shanna P. Hugle*, deputy assistant public defender, for the appellant (defendant).

*Rajan M. Doering* and *Michael H. Coudert*, certified legal interns, with whom were *Ronald G. Weller*, senior assistant state's attorney, and, on the brief, *Sharmese L. Walcott*, state's attorney, and *Danielle O'Connell*, assistant state's attorney, for the appellee (state).

*Opinion*

ALEXANDER, J. The principal issue in this appeal requires us to consider how a trial court should exercise its discretion when addressing, pursuant to Practice Book § 42-31, a juror's equivocation during a jury poll.

The defendant, John Bolton, raises three claims on appeal from the judgment of conviction of murder in violation of General Statutes § 53a-54a (a) and criminal possession of a firearm in violation of General Statutes (Rev. to 2019) § 53a-217 (a) (1). First, he claims that the trial court abused its discretion when it denied his motion for a mistrial following its decision to stop polling the jury when a juror reported her disagreement with the verdict. Second, he claims that the trial court's response to the juror's equivocation resulted in a coerced verdict. Third, he claims that the trial court failed to comply with Practice Book § 42-31 when it stopped polling the jury. We disagree with each of the defendant's claims and affirm the judgment of conviction.

The record reveals the following relevant facts and procedural history. On January 8, 2019, the defendant shot and killed the victim, Carl Spence, in Hartford, after an argument over illegal narcotics sales. The state charged the defendant with murder and criminal possession of a firearm.

The defendant elected a jury trial. After five days of evidence, the jury began its deliberations late in the afternoon of March 1, 2023. At 12:41 p.m. on March 2, after approximately four and one-half hours of deliberation over two days, the jury informed the trial court that it had reached a verdict. The jury returned to the courtroom, and the foreperson announced that the jury had found the defendant guilty of murder and criminal possession of a firearm. The court clerk asked the jury to confirm the verdict, and, collectively, the jurors responded in the affirmative. Defense counsel requested that the jury be polled. During the jury poll, the first five jurors stood and individually affirmed the verdict. When the sixth juror, S.C.,[1] was asked to stand, she rose but did not speak. The

---

[1] "In accordance with our usual practice, we identify jurors by [their initials] in order to protect their privacy interests." (Internal quotation marks omitted.) *State* v. *Holmes*, 334 Conn. 202, 207 n.6, 221 A.3d 407 (2019).

court clerk asked S.C. whether she found the defendant guilty or not guilty of murder. S.C. initially did not respond but then asked: "I can't change my mind, right?" The trial court responded: "[Y]ou're having a question? So, you're not prepared to say 'guilty' at this point?" S.C. replied: "No." The court then sent the jury back to the jury room without further instruction, telling the jurors that it needed "to take up a question with the lawyers."

After the jury exited the courtroom, the court stated: "[S]o, at this point, I think, it was clear that one of the jurors has thoughts about saying publicly 'guilty' in court at this point. So, unless I hear different from the lawyers, my thinking would be to instruct the jury to continue deliberating the case." Defense counsel moved for a mistrial, arguing that S.C. would now face "undue pressure" in deliberations. The court took that motion "under advisement" and called a brief recess to make sure it was "not missing anything." Approximately ten minutes later, upon reconvening, the court conveyed the clerk's report that S.C. did not want to return to the jury room with the other jurors and that she had been provided with her own room. After conferring with the parties further, the court noted that the jury was "not deliberating right now" and that it intended to release the jury for lunch and to have it resume deliberations afterward. Defense counsel then suggested that the court speak with S.C. separately but withdrew that request immediately. Defense counsel agreed with the court's reluctance to speak separately with S.C. and that the jurors "need to communicate . . . with notes."

The jurors then reentered the courtroom. The court explained the polling procedure and observed that one of the jurors had indicated that she could not answer the clerk's question. The court continued: "[B]efore I send you to lunch . . . the threshold question . . . I need to resolve is—is that juror having . . . second thoughts about her decision on [guilt] or innocence or is it a matter of not being able to say something publicly? In other

words, say the word 'guilty' in public or is it a question about the verdict itself that you don't want to . . . end your deliberation on that issue—on that question of guilt or innocence?" S.C. responded: "Both."

The trial court then stated, "at this point, it's clear we do not have a unanimous verdict in this case," and informed the jurors that they would continue their deliberations after a one hour lunch break. The court instructed the jurors to refer to the written copy of the jury instructions that they had previously received, a portion of which related to the deliberation process.[2] After the jury exited, defense counsel again moved for a mistrial because S.C. had said that her problem was with the guilty verdict itself, and not merely with the act of announcing the verdict in open court. The court denied the motion, explaining: "I think it's clear we've got a situation [in which] eleven people have returned a verdict of guilty.[3] One person is [having] second thoughts and wants to continue deliberating. That's the process. . . . [S]o, we'll let the process play out, and we'll see what the afternoon brings."

[2] The jury instructions regarding the deliberation process provided in relevant part: "Each of you has taken an oath to deliver a true verdict according to the evidence. That is the strength of the jury system. Each of you takes into the deliberation room your individual experience and wisdom. Your task is to pool that experience and wisdom. You do that by giving your views and listening to the views of others. There must necessarily be discussion, argument, and give-and-take within the scope of your oath. That is the way in which a unanimous verdict is reached.

"In the jury room, you should talk with each other about the case. Each of you must make your own conscientious decision, but only after . . . you have considered all the evidence, discussed it fully with the others, and listened to the views of your fellow jurors. You should consider whether your views are fair and reasonable, and try your best to decide the case according to the law. Do not hesitate to reexamine your own views and to change your mind if you are persuaded that you should do so but do not surrender your honest opinion solely because your opinion is different from the other jurors or for the mere purpose of returning a verdict."

[3] Because the jury poll was not completed, it is unclear how the trial court determined that eleven jurors had returned a verdict of guilty.

Following the lunch break, the jury deliberated for approximately two more hours. At 4:30 p.m., the jury sent a note to the court asking whether a guilty vote would need to be stated out loud or if it could be written down and given to the court clerk. The court had the jury reenter the courtroom, explained that each juror would have to answer out loud, and sent the jurors back to the jury room to determine whether they wanted to continue deliberating until the end of the day or to resume the following morning. At 4:50 p.m., the jury sent a note indicating that it had reached a verdict. The jury returned to the courtroom and delivered a verdict of guilty on both counts. The defendant again asked for a jury poll, and, in that second poll, all twelve jurors, including S.C. individually, affirmed that their vote was guilty on both counts. The court accepted and recorded the verdict. Thereafter, the court rendered judgment in accordance with the verdict and imposed a total effective sentence of thirty years of imprisonment. This direct appeal followed. See General Statutes § 51-199 (b) (3).

I

The defendant's first claim is that the trial court abused its discretion when it denied his motion for a mistrial. The defendant contends that the totality of the circumstances did not support the court's decision and that returning the jury to deliberate substantially and irreparably prejudiced his case because S.C. was coerced into returning a guilty verdict. We disagree.

"[Although] the remedy of a mistrial is permitted under the rules of practice,[4] it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic

---

[4] See Practice Book § 42-43.

remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances [that] may arise during the trial in which his function is to [ensure] a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. . . . The decision whether to grant a mistrial is within the sound discretion of the trial court." (Footnote added; internal quotation marks omitted.) *State* v. *Ortiz*, 280 Conn. 686, 702, 911 A.2d 1055 (2006); see also *State* v. *Henderson*, 348 Conn. 648, 666–67, 309 A.3d 1208 (2024). It is the defendant's burden to establish the prejudice necessary to warrant a mistrial. See, e.g., *State* v. *Gore*, 342 Conn. 129, 169, 269 A.3d 1 (2022).

"The purpose of a jury poll is to test the uncoerced unanimity of the verdict by requiring each juror to answer for himself, thus creating individual responsibility, eliminating any uncertainty as to the verdict announced by the foreman." (Internal quotation marks omitted.) *United States* v. *Gambino*, 951 F.2d 498, 502 (2d Cir. 1991), cert. denied sub nom. *D'Amico* v. *United States*, 504 U.S. 918, 112 S. Ct. 1962, 118 L. Ed. 2d 563 (1992); see also *United States* v. *Singer*, 345 F. Supp. 2d 230, 233 (D. Conn. 2004), aff'd, 241 Fed. Appx. 727 (2d Cir. 2007). "[T]he right to poll the jury, although not constitutional, is nonetheless a substantial right . . . that enables the court to ascertain with certainty that a unanimous verdict has in fact been recorded and that no juror has been coerced or induced to agree to a verdict to which he [or she] has not fully assented." (Citation omitted; internal quotation marks omitted.) *State* v. *Pare*, 253 Conn. 611, 631–32, 755 A.2d 180 (2000).

Jury polling in criminal trials is governed by Practice Book § 42-31, which provides: "After a verdict has been

returned and before the jury has been discharged, the jury shall be polled at the request of any party or upon the judicial authority's own motion. The poll shall be conducted by the clerk of the court by asking each juror individually whether the verdict announced is such juror's verdict. *If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or it may be discharged.*" (Emphasis added.)

Connecticut's appellate courts have had few opportunities to consider a trial court's response to a lack of unanimity revealed by a jury poll in a criminal trial. In *State* v. *Gullette*, 3 Conn. Cir. 153, 209 A.2d 259 (App. Div. 1964), after the trial court gave the jury a Chip Smith charge,[5] the first nine jurors announced a guilty verdict. Id., 155. The tenth juror stated that her verdict was "[n]ot guilty," and that she "was the last one that held out." (Internal quotation marks omitted.) Id. The trial court repeated the Chip Smith charge to the jury and then sent the jury back to the jury room to continue its deliberations. Id., 156–57. Four minutes later, the jury returned and announced a unanimous guilty verdict, which each juror confirmed after being polled again. Id., 157. The trial court denied the defendant's motion to set the verdict aside. Id., 163. The reviewing court found no abuse of discretion in the trial court's assessment that "what seemed originally to have been

[5] First articulated in *State* v. *Smith*, 49 Conn. 376 (1881), "[a] Chip Smith [charge] reminds the jurors that they must act unanimously, while also encouraging a deadlocked jury to reach unanimity. . . . A similar jury instruction, known as an *Allen* charge, is utilized in the federal courts." (Citations omitted; internal quotation marks omitted.) *State* v. *O'Neil*, 261 Conn. 49, 51 n.2, 801 A.2d 730 (2002); see *Allen* v. *United States*, 164 U.S. 492, 501, 17 S. Ct. 154, 41 L. Ed. 528 (1896); see also *State* v. *Feliciano*, 256 Conn. 429, 439, 443, 778 A.2d 812 (2001) (reaffirming "fundamental logic underlying the Chip Smith charge," which "makes clear the necessity, on the one hand, of unanimity among the jurors in any verdict, and on the other hand the duty of careful consideration by each juror of the views and opinions of each of his fellow jurors" (internal quotation marks omitted)).

a dissent by one juror was, in fact, only confusion on her part, caused by an unfamiliar procedure," as confirmed by the jury's quick return. Id., 165. The court further concluded that the record did not support a claim of coercion and that reinstructing the jury on the Chip Smith charge did not prejudice the defendant, especially given the lack of any exception to the original charge. Id., 164–65.

This court has considered jury polling in several civil cases applying Practice Book § 16-32, which is almost identical to Practice Book § 42-31, and has held that polling in civil cases serves the same purpose of ensuring jury unanimity and lack of coercion. See *Wiseman* v. *Armstrong*, 295 Conn. 94, 102–104, 989 A.2d 1027 (2010). We find instructive *Tough* v. *Ives*, 162 Conn. 274, 294 A.2d 67 (1972), in which this court stated that, during a jury poll, a "[n]eutral inquiry by the trial judge as to the meaning of a juror's response is not erroneous," and clarified that, "[o]nly when such inquiry is coercive or seeks explanations, motives or information about occurrences in the jury room should it be found objectionable." Id., 280. In *Tough*, this court concluded that the trial court was correct *not* to send the jury back for further deliberations when its questioning of a dissenting juror revealed that she had simply been confused by the polling procedure. Id., 277–78, 280.

Similarly, in *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 3 A.3d 892 (2010), this court upheld the trial court's denial of a motion for a mistrial following what appeared to be a juror's expression of disagreement with the verdict during the jury poll. Id., 388. Deferring to the trial court's "opportunity to observe the demeanor of [the juror] during the entire trial, especially during the return of the verdict and the polling process, and . . . presen[ce] when [the juror] made the statements at issue," this court concluded that the trial court did not abuse its discretion when it conducted a neutral

inquiry into whether the juror disagreed with the verdict or was confused by the procedure. Id., 397. Because the juror's "final answer" with respect to the verdict controls; id., 398; see also *Josephson* v. *Meyers*, 180 Conn. 302, 309, 429 A.2d 877 (1980); *State* v. *Gullette*, supra, 3 Conn. Cir. 166; the trial court in *Hurley* had correctly determined that the confused juror's final answer was operative and accepted the verdict as unanimous. See *Hurley* v. *Heart Physicians, P.C.*, supra, 398.

In contrast to *Hurley*, in *State* v. *Bell*, 13 Conn. App. 420, 537 A.2d 496 (1988), the Appellate Court held that the trial court had used an erroneous polling procedure. Id., 428, 430. In *Bell*, a juror responded to a poll as to her verdict by asking, " '[d]o I have to answer that as a guilty or can I say something?' " Id., 428 n.4. The trial court answered that all she could say was whether the guilty verdict was her verdict. Id. When polled a second time, the juror responded, " 'I can't say.' " Id. The trial court attempted three additional times to obtain the juror's verdict, and only after the fifth request did the juror state that the defendant was guilty. Id., 428–29 and n.4. The Appellate Court held that the trial court should have either directed the jury to retire for further deliberations or discharged the jury and declared a mistrial. Id., 432. The Appellate Court determined that the juror's response of " 'I can't say' " should have signaled to the trial court that the juror still had questions about the defendant's guilt and, after the court continued to ask for her verdict, that her responses indicated doubt, rather than confusion. Id., 431–32. The Appellate Court concluded that a new trial was required because the juror's final answer of " 'guilty' " had been "conduced by the trial court during the polling process." Id., 432.

Taken together, our state's cases are consistent with an approach used by numerous federal and state courts[6]

---

[6] See *United States* v. *Coulter*, 57 F.4th 1168, 1193 (10th Cir.), cert. denied,      U.S.      , 143 S. Ct. 2627, 216 L. Ed. 2d 1218 (2023); *United States* v. *Williams*, 819 F.3d 1026, 1030 (7th Cir. 2016); *United States* v. *Gambino*,

in assessing whether a trial court's response to a dissenting juror during a poll has resulted in a verdict that is the product of impermissible coercion or merely reflects "[t]he persuasive impetus inherent in the requirement of [jury] unanimity . . . ." *Harris* v. *United States*, 622 A.2d 697, 701 (D.C. 1992), cert. denied, 510 U.S. 1129, 114 S. Ct. 1097, 127 L. Ed. 2d 410 (1994). This case law is instructive because these jurisdictions follow rules modeled after an American Bar Association model rule or rule 31 (d) of the Federal Rules of Criminal Procedure,[7] both of which are substantively identical to Practice Book § 42-31.

For example, the District of Columbia Court of Appeals has held that the reviewing court must assume the perspective of the jurors and make two inquiries to determine whether there has been an abuse of discretion by the trial court under the unique facts and circumstances of the particular case. See *Harris* v. *United States*, supra,

supra, 951 F.2d 501–502; *United States* v. *Fiorilla*, 850 F.2d 172, 176–77 (3d Cir.), cert. denied, 488 U.S. 966, 109 S. Ct. 492, 102 L. Ed. 2d 529 (1988), and cert. denied, 488 U.S. 966, 109 S. Ct. 492, 102 L. Ed. 2d 529 (1988); *Browne* v. *State*, 215 Md. App. 51, 73, 79 A.3d 410 (2013); *State* v. *Ware*, 498 N.W.2d 454, 458–59 (Minn. 1993); *State* v. *Frederick*, 783 S.W.2d 469, 472 (Mo. App. 1990); *State* v. *Pyatt*, 300 Mont. 25, 29, 1 P.2d 953 (2000); *State* v. *Milton*, 178 N.J. 421, 437–38, 840 A.2d 835 (2004); *State* v. *Holloway*, 106 N.M. 161, 164, 740 P.2d 711 (App.), cert. denied, 106 N.M. 405, 744 P.2d 180 (1987).

[7] Standard 15-5.6 of the ABA Standards for Criminal Justice provides: "When a verdict has been returned and before the jury has dispersed, the jury should be polled at the request of any party or upon the court's own motion. The poll should be conducted by the court or clerk of court asking each juror individually whether the verdict announced is his or her verdict. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged." A.B.A., ABA Standards for Criminal Justice: Discovery and Trial by Jury (3d Ed. 1996) standard 15-5.6.

Rule 31 (d) of the Federal Rules of Criminal Procedure provides: "After a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually. If the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury."

622 A.2d 701. "The first inquiry is into the inherent coercive potential of the situation before the court. The second inquiry requires an examination of the actions of the trial judge in order to determine whether these actions exacerbated, alleviated or were neutral with respect to coercive potential. Then the two factors should be viewed together to assess the possibility of actual coercion on any juror or jurors." Id., 701–702.

It follows, therefore, that the trial court must proceed carefully and cautiously in order to minimize the coercive potential when it takes action pursuant to its authority under Practice Book § 42-31. Depending on the circumstances before it, the court may choose to canvass the dissenting juror, to dismiss the jury and declare a mistrial, or to issue a Chip Smith charge or other instruction before returning the jury to its deliberations; it may also simply return the jury to deliberate without additional instruction. See id., 701. "Such actions by the court are perfectly acceptable in appropriate circumstances when carried out with care. Indeed, they are part of the normal functioning of the jury system. To release a 'hung' jury [when] a true deadlock does not exist constitutes an unnecessary and undesirable waste of resources, and the trial court has the right and duty to urge a jury to work diligently to reach a fair and freely arrived at verdict, if possible. What is impermissible is a situation [in which] the outcome is the result of coercion, i.e., [when] as a consequence of developments during jury deliberation or trial court action or inaction, one or more jurors feel forced to change their votes from what they individually in fact believe, and thus the verdict is not freely and fairly given." Id. Impermissible coercion occurs "when jurors surrender their honest opinions for the mere purpose of returning a verdict." (Internal quotation marks omitted) *United States* v. *Williams*, 819 F.3d 1026, 1030 (7th Cir. 2016).

Having reviewed the record, we conclude that no impermissible coercion occurred in the present case. First, the trial court terminated the jury poll as soon as S.C., the sixth juror polled, noted her disagreement with the verdict. Particularly when the disagreement occurs early in the polling process, terminating a poll immediately "avoids revealing the number and identity of any dissenting jurors, reducing the poll's coercive effect." *United States* v. *Banks*, 982 F.3d 1098, 1104 (7th Cir. 2020); see, e.g., *United States* v. *Thomas*, 791 F.3d 889, 898–99 (8th Cir. 2015); *Leake* v. *United States*, 77 A.3d 971, 976–77 (D.C. 2013); cf. *United States* v. *Williams*, supra, 819 F.3d 1032 (completion of entire poll after first juror dissented resulted in "pressure on [the first juror] as the publicly known lone dissenter"); *Crowder* v. *United States*, 383 A.2d 336, 343 and n.14 (D.C. 1978) ("inevitable increase in potential coerciveness" occurs when twelfth juror dissents because numerical division of jury and identity of lone dissenter are revealed in open court).[8] Here, the polling stopped after six jurors had announced their verdict, and, although S.C.'s identity as a dissenter was known, the exact division of the jury was never revealed.[9]

The defendant also argues that S.C.'s choice to be in a separate room prior to resuming deliberations is evidence of a high degree of isolation and that "the pressure inside the jury room was more than she could bear." Because S.C. was never questioned individually about her decision to separate herself from the other

---

[8] Continuing to poll the jury after one juror states his or her dissent is not coercive per se. See, e.g., *United States* v. *Carraway*, 108 F.3d 745, 751 (7th Cir.), cert. denied, 522 U.S. 891, 118 S. Ct. 228, 139 L. Ed. 2d 160 (1997).

[9] Although the trial court, in denying the defendant's motion for a mistrial, surmised, "I think it's clear we've got a situation [in which] eleven people have returned a verdict of guilty" and that "[o]ne person is [having] second thoughts and wants to continue deliberating," it did not do so in the presence of the jury. Thus, because S.C. was not aware of the court's supposition, it could not have pressured her.

jurors, it would be speculative to ascribe any motives to her choice.[10] Indeed, S.C.'s choice to take a respite from the deliberation process could well have been beneficial after the first poll,[11] as such breaks help to relieve any tensions that may arise when a jury must renew deliberations following dissent in a poll. A break followed by a substantial amount of additional deliberation time may, in fact, indicate a lack of coercion. See, e.g., *Leake* v. *United States*, supra, 77 A.3d 979.

The circumstances of the present case, known to the trial court when it denied the defendant's motion for a mistrial, therefore, are not indicative of potential coercion beyond the pressure inherent in the ordinary process of reaching a unanimous jury verdict. Without other evidence indicating coercion, for example, misconduct or other negative reaction to S.C.'s dissent by the other jurors, the fact that S.C. expressed disagreement or equivocation regarding the verdict relatively early in the poll, took a break to relieve tensions, and then returned to deliberate with her fellow jurors without incident demonstrates that S.C. had not abandoned her honest conviction in ultimately voting to find the defendant guilty. See *Smith* v. *United States*, supra, 542 A.2d 824.

---

[10] Speaking publicly in open court may be an intimidating experience for a layperson under even the best of circumstances, let alone during the difficult task of announcing a verdict in a serious criminal case, and S.C. acknowledged her reluctance to state the verdict in public when asked by the court.

[11] Even if we assume that S.C.'s decision to isolate herself reflected a higher potential that she felt coerced by the circumstances, courts have nevertheless held that trial courts do not abuse their discretion by resuming jury deliberations after a juror has openly attempted to leave or otherwise separated herself from the jury. See, e.g., *Wilson* v. *United States*, 419 A.2d 353, 356–57 (D.C. 1980) (there was no abuse of discretion when trial court individually reminded juror of her obligations after she attempted to leave, delivered deadlocked jury instruction, and then dismissed jury for day to resume deliberations next morning after receiving note revealing that juror who wished to leave was lone holdout).

Next, we review the trial court's actions in response to the situation to determine "whether these actions exacerbated, alleviated or were neutral with respect to coercive potential." *Harris* v. *United States*, supra, 622 A.2d 701. The greater the potential for coercion, the greater the need for the trial court to mitigate that risk. *Coley* v. *United States*, 196 A.3d 414, 421 (D.C. 2018).

The District of Columbia Court of Appeals' decisions in *Leake* v. *United States*, supra, 77 A.3d 971, and *Green* v. *United States*, 740 A.2d 21 (D.C. 1999), inform our analysis regarding whether a trial court's actions, following a jury poll, affected the coercive potential. These cases are also consistent with this court's emphasis on neutrality in *Hurley* and *Tough*. See *Hurley* v. *Heart Physicians*, *P.C.*, supra, 298 Conn. 394, 397; *Tough* v. *Ives*, supra, 162 Conn. 277–78, 280.

In *Leake*, after a juror dissented from a jury poll following two days of deliberations, the trial court immediately stopped the polling. *Leake* v. *United States*, supra, 77 A.3d 973–74. After conferring with counsel, who agreed that a deadlocked jury instruction was unnecessary, the trial court stated: "I'm going to ask you to resume your deliberations and let me know when you've reached a verdict or if you have any more questions." (Internal quotation marks omitted.) Id., 974. The District of Columbia Court of Appeals viewed this language as neutral because it did not direct the jury to reach a unanimous verdict or impliedly encourage or pressure a known dissenter to agree with the majority. Id., 978 and n.5. Similarly, in *Green*, the court held that the trial court took an "essentially neutral course of action"; *Green* v. *United States*, supra, 740 A.2d 30; when it instructed the jury: "[I]n the polling of the jury . . . it became apparent that you had not actually reached a unanimous verdict . . . . For this reason, I'm going to be asking you to return to the jury room for further consideration of your [verdict] . . . . If you

are unanimous, your foreperson should send me a note so indicating and I will poll you again. If you are not unanimous, I will ask that you resume your deliberations and see if you can reach a unanimous verdict." (Internal quotation marks omitted.) Id., 25. Such instructions stand in stark contrast to the individualized pressure applied to the juror in *Bell*, in which the trial court's actions exacerbated the coercive atmosphere through repeated questioning of the dissenting juror. See *State* v. *Bell*, supra, 13 Conn. App. 428 and n.4, 430.

In the present case, the trial court stopped the polling of the jury immediately after S.C.'s dissent and excused the jury from the courtroom in order to discuss the matter with counsel. The defendant contends that this procedure was an abuse of discretion because the court gave no instructions to the jury upon this first excusal. We disagree. The trial court took a neutral course of action that allowed it, outside the presence of the jury, to consider all of the relevant circumstances and to solicit input from counsel as to how to proceed. When the jury returned to the courtroom, the court canvassed S.C. The canvass was neutral in tone and content. It was fashioned to help the court determine the appropriate procedure to follow and elicited only whether S.C.'s equivocation was related to the procedure, namely, speaking out loud in court, or to the verdict itself. The canvass was well within the court's discretion. The question was framed as a binary choice: was S.C. uncomfortable stating the verdict out loud or was she having second thoughts? There was no inquiry into her reasons, motivations, or any other internal processes that would reveal what took place in the jury room. See *Tough* v. *Ives*, supra, 162 Conn. 280. Upon learning that S.C. was concerned with both the substance of the verdict and the need to state the verdict aloud, the court advised the jury to consult the jury instructions in its

possession and to return to deliberations after the lunch break.

The defendant contends that this course of action ignored S.C.'s isolation and that the trial court failed to consider the totality of the circumstances in exercising its discretion. He further contends that the court should have given a Chip Smith charge to help the jury "assess the evidence and the opinions of the other jurors with an open mind." We are not persuaded. Although it would have been within the court's discretion to give a Chip Smith charge,[12] it was not necessary to do so.[13]

---

[12] The model criminal jury instructions on the Judicial Branch website provide the following Chip Smith charge: "The instructions that I shall give you now are only to provide you with additional information so that you may return to your deliberations and see whether you can arrive at a verdict.

"Along these lines, I would like to state the following to you. The verdict to which each of you agrees must express your own conclusion and not merely the acquiescence in the conclusion of your fellow jurors. Yet, in order to bring your minds to a unanimous result, you should consider the question you have to decide not only carefully but also with due regard and deference to the opinions of each other.

"In conferring together, you ought to pay proper respect to each other's opinions and listen with an open mind to each other's arguments. If the much greater number of you reach a certain conclusion, dissenting jurors should consider whether their opinion is a reasonable one when the evidence does not lend itself to a similar result in the minds of so many of you who are equally honest and equally intelligent, who have heard the same evidence with an equal desire to arrive at the truth and under the sanctions of the same oath.

"But please remember this. Do not ever change your mind just because other jurors see things differently or to get the case over with. As I told you before, in the end, your vote must be exactly that—your own vote. As important as it is for you to reach a unanimous agreement, it is just as important that you do so honestly and in good conscience.

"What I have said to you is not intended to rush you into agreeing on a verdict. Take as much time as you need to discuss the matter. There is no need to hurry." Connecticut Criminal Jury Instructions 2.10-4, available at https://www.jud.ct.gov//JI/Criminal/Criminal.pdf (last visited July 15, 2025).

[13] Because antideadlock instructions may create additional coercion in a postpoll environment, the District of Columbia Court of Appeals has adopted a middle ground instruction, known as a *Crowder* charge, that may be given when a jury poll reveals a lack of unanimity. *Callaham* v. *United States*, 268 A.3d 833, 844 (D.C. 2022). The *Crowder* charge provides: "It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual

On the basis of the circumstances before it, and after soliciting input from counsel, the trial court opted for a minimal and neutral course of action in order to allow the deliberation process to continue. Because the trial court was "in the best position to observe the demeanor of the jurors"; *State* v. *Tirado*, 194 Conn. 89, 95–96, 478 A.2d 606 (1984); we conclude that the trial court did not abuse its discretion in denying the defendant's motion for a mistrial.

## II

The defendant raises a second, unpreserved claim, pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015),[14] and the plain

judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict." (Internal quotation marks omitted.) *Crowder* v. *United States*, supra, 383 A.2d 342 n.11. The *Crowder* charge is intended to "allay" the fear that a "lone recalcitrant juror will conclude that the trial judge is requiring further deliberations in order to eliminate his dissent." Id. It differs from the Chip Smith charge insofar as it does not specifically ask the dissenting juror to consider why the majority of the jurors have a different view of the case. The *Crowder* charge is not intended for routine use but, rather, for use only in cases in which "there is a particularly high likelihood of juror coercion." (Internal quotation marks omitted.) *Green* v. *United States*, supra, 740 A.2d 29. The *Crowder* charge is very similar to the deliberation process charge the trial court initially gave the jury and later reminded the jury of when it instructed it to resume deliberations after the first poll failed. See footnote 2 of this opinion.

[14] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of the fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original, footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see *In re Yasiel R.*, supra, 317 Conn. 781 (modifying third prong of *Golding*).

error doctrine.[15] He claims that the final verdict violated the constitutional requirement that a jury's verdict be both unanimous and free from coercion because there was an unacceptable risk that S.C. had been coerced into assenting to a guilty verdict. The defendant relies on *United States* v. *Pleva*, 66 F.2d 529 (2d Cir. 1933), and argues that undue pressure forced S.C. to "abandon her conscientiously held belief" and to acquiesce in the guilty verdict. He further argues that this pressure was the result of the trial court's failure to address S.C.'s isolation directly and to provide adequate guidance in the form of a Chip Smith charge when sending the jury back to deliberate a second time. We agree with the state's argument that this claim fails under the third prong of *Golding* because the alleged constitutional violation did not occur or deprive the defendant of a fair trial.

We understand the defendant's claim to have two separate predicates. The first is premised on the claim that the trial court's instructions to the jury upon resumption of deliberations were not adequate to address juror coercion because they did not include a Chip Smith charge. The second is that S.C.'s personal circumstances had, in fact, resulted in her being coerced into assenting to a guilty verdict. We address each in turn.

Our resolution of the defendant's instructional claim is governed by the following legal principles. "It is well settled that jury instructions are to be reviewed in their entirety. . . . When the challenge to a jury instruction is of constitutional magnitude, the standard of review

---

[15] The plain error doctrine "is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party." (Internal quotation marks omitted.) *State* v. *Blaine*, 334 Conn. 298, 305, 221 A.3d 798 (2019); see Practice Book § 60-5.

is whether it is reasonably possible that the jury [was] misled. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement . . . . Individual instructions also are not to be judged in artificial isolation . . . . Instead, [t]he test to be applied . . . is whether the charge . . . as a whole, presents the case to the jury so that no injustice will result. . . . Whether a jury [was] coerced by statements of the trial judge is to be determined by an examination of the record. . . . The question is whether in the context and under the circumstances in which the statements were made, the jury [was], actually, or even probably, misled or coerced." (Citation omitted; internal quotation marks omitted.) *State* v. *Mitchell*, 170 Conn. App. 317, 323, 154 A.3d 528, cert. denied 325 Conn. 902, 157 A.3d 1146 (2017).

Since *State* v. *O'Neil*, 261 Conn. 49, 801 A.2d 730 (2002), this court has concluded that the Chip Smith charge is not coercive and is an acceptable method of facilitating the deliberation process when faced with a deadlocked jury. Id., 73. Nevertheless, this instruction is not required every time a jury indicates that it is unable to reach an agreement, and some authorities have stated that deadlocked jury instructions are themselves coercive when delivered in response to a jury poll breakdown. See, e.g., *Green* v. *United States*, supra, 740 A.2d 31. We agree with the state that the Appellate Court's decision in *State* v. *Mitchell*, supra, 170 Conn. App. 317, provides guidance in this context.

In *Mitchell*, the Appellate Court determined that, because the trial court's jury instruction to continue deliberating did not include language potentially coercing the jurors to reach a unanimous verdict, the cautionary language of the Chip Smith charge was not required. Id., 325–26. In fact, this court has never held that lan-

guage to be mandatory but, rather, has stated that "a defendant is entitled only to a jury unfettered by an order to decide and not to an instruction that a jury may hang." (Internal quotation marks omitted.) *State* v. *Smith*, 222 Conn. 1, 22, 608 A.2d 63, cert. denied, 506 U.S. 942, 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992).

We conclude, therefore, that, when the trial court instructed the jurors to continue the deliberation process, it did not preclude the possibility that disagreement might occur. The court merely restated the requirement that any decision they reach must be unanimous, which is not coercive. The court's original instructions, which it directed the jurors to review, included the following instructions: "You should take as much time as you feel is necessary to [deliberate]"; "[e]ach of you has taken an oath to deliver a true verdict according to the evidence"; "[y]our task is to pool [your] experience and wisdom . . . by giving your views and listening to the views of others"; "[e]ach of you must make your own conscientious decision"; and "do not surrender your honest opinion solely because your opinion is different from the other jurors or for the mere purpose of returning a verdict."

We also disagree with the defendant's claim that S.C.'s verdict was the product of coercive circumstances. There is no evidence that S.C. faced undue pressure of the kind present in *United States* v. *Pleva*, supra, 66 F.2d 529. In *Pleva*, a juror made it known on the record that he was having a medical issue with his bladder. Id., 531–32. The court called in a physician to examine the juror, and he stated, on the record, that the juror was "going to be in for a lot of misery" due to his symptoms. (Internal quotation marks omitted.) Id., 532. After the jury delivered a guilty verdict, the juror "made known in open court that he agreed [to the verdict] only because he felt unable physically to maintain longer the position he thought was right . . . ." Id., 533.

By contrast, the record in the present case indicates that S.C. was comfortable communicating with the trial court on multiple occasions, including an email exchange prior to trial regarding her travel plans. She also was willing to express her second thoughts about the verdict during the first jury poll, and she removed herself from the jury room during the recess following that poll. Thereafter, the jury deliberated for an additional two hours after being sent back to the jury room, following approximately four and one-half hours of deliberation spanning two days. Other courts have found that similar lengths of additional deliberation are a strong indication that jurors do not "feel coerced into immediately returning a verdict." *United States* v. *Thomas*, supra, 791 F.3d 898; see id. (additional two hours of deliberation following *Allen* charge[16] indicates lack of coercion); *United States* v. *McDonald*, 825 F. Supp. 2d 472, 483 (S.D.N.Y. 2011) (one hour of additional deliberation following supplemental instruction was significant amount of time suggesting lack of coercion because jury had deliberated for less than four hours in total before returning initial, nonunanimous verdict), aff'd, 759 F.3d 220 (2d Cir. 2014). But see *United States* v. *Banks*, supra, 982 F.3d 1105 (twenty-nine minutes of additional deliberation following supplemental instruction that lacked language reminding jurors "not [to] surrender their honest beliefs" suggested coercion). During the second jury poll, when S.C. had another opportunity to voice concerns, she announced her verdict and affirmed it. S.C. never indicated that any coercion or intimidation had taken place, and there is no evidence in the record to support such an inference.

We conclude that the trial court's instruction to continue deliberations did not coerce S.C. into reaching a guilty verdict and that no additional jury instruction was required. For these reasons, we conclude that the

[16] See footnote 5 of this opinion.

defendant has failed to satisfy the third prong of *Golding* and cannot prevail on this unpreserved claim.[17]

### III

The defendant's final claim is that the trial court violated Practice Book § 42-31 when it discontinued the jury poll following S.C.'s disagreement with the verdict. We decline to reach this claim because it is not preserved for appellate review.

"It is well settled that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial, and [o]nly in [the] most exceptional circumstances can and will [an appellate] court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." (Internal quotation marks omitted.) *Jobe* v. *Commissioner of Correction*, 334 Conn. 636, 643, 224 A.3d 147 (2020). The defendant's claim was not distinctly raised because he did not ask the trial court to complete the jury poll at that time and did not argue in his motion for a mistrial that an incomplete poll violated the rules of practice.

Moreover, this claim is not subject to *Golding* review. Although the right to a jury poll under the rules of practice is "a corollary to the defendant's right to a unanimous verdict," it is "not of constitutional dimension . . . ." (Internal quotation marks omitted.) *State* v. *Pare*, supra, 253 Conn. 623. Because the defendant's claim is not of constitutional magnitude, it fails to satisfy the second prong of *Golding*. See, e.g., *State* v. *Samuel*

---

[17] We also conclude that the defendant is not entitled to relief under the plain error doctrine. See, e.g., *State* v. *Blaine*, 334 Conn. 298, 305, 221 A.3d 798 (2019) ("plain error review is reserved for only the most egregious errors" (internal quotation marks omitted)); see also *State* v. *Stephens*, 301 Conn. 791, 797, 22 A.3d 1262 (2011) (concluding that defendant's claims, which failed under the third prong of *Golding* were "not entitled to the extraordinary relief available under the plain error doctrine").

*U.*, 348 Conn. 304, 317, 303 A.3d 1175 (2023). Accordingly, we decline to review the defendant's unpreserved claim concerning the trial court's decision not to complete the jury poll after S.C. indicated her dissent from the verdict.

The judgment is affirmed.

In this opinion the other justices concurred.